

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-10-1998

# Sameric Corp of DE v. Cty of Philadelphia

Precedential or Non-Precedential:

Docket 97-1615

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Sameric Corp of DE v. Cty of Philadelphia" (1998). *1998 Decisions.* Paper 74.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/74

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 10, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1615

SAMERIC CORPORATION OF DELAWARE, INC.,
        Appellant

v.

CITY OF PHILADELPHIA; PHILADELPHIA HISTORICAL
COMMISSION, an Agency of the City of Philadelphia;
EDWARD A. MONTGOMERY, JR.; RICHARD TYLER,
Ph.D.; CHRIS CASHMAN; DAVID BROWNLEE, Ph.D.;
DAVID HOLLENBERG; BARBARA KAPLAN; JOAN
FERRERA; and DAVID WISMER, Individually and in Their
Official Capacities as Members of the Philadelphia
Historical Commission.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 95-07057)

Argued March 9, 1998

BEFORE: GREENBERG, SCIRICA, and ALDISERT,
Circuit Judges.

(Filed: April 10, 1998)

Richard A. Sprague
Geoffrey C. Jarvis (argued)
Charles J. Hardy
David S. Lubin
Sprague & Sprague
The Wellington Building, Suite 400
135 South 19th Street
Philadelphia, PA 19103

Attorneys for Appellant

Michael F. Eichert
  (argued)
Chief Deputy City Solicitor
City of Philadelphia Law Department
1600 Arch Street, 8th Floor
Philadelphia, PA 19103

Robert C. Heim
Arthur Newbold
Diane S. Danoff
Aline Fairweather
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

Attorneys for Appellees

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

Sameric Corporation of Delaware ("Sameric") appeals from the district court's order of July 14, 1997, granting summary judgment to the City of Philadelphia (the "City") and various individual defendants. Sameric filed this action in November 1995 alleging that the City violated its federal and state constitutional rights by improperly designating Sameric's theater as an historic building and subsequently

denying Sameric a permit to demolish the theater. Sameric's complaint alleged that, as a result of the defendants' unlawful designation of the theater and subsequent denial of the demolition permit, its business was injured and it was forced to sell its properties, including the theater, at substantially less than fair market value.

The district court had subject matter jurisdiction over these claims pursuant to 28 U.S.C. SS 1331, 1367. We have jurisdiction to review the final order of the district court pursuant to 28 U.S.C. S 1291.

## II. FACTS AND PROCEDURAL HISTORY

### A. Philadelphia's Historic Preservation Ordinance

The Philadelphia Historical Commission ("Historical Commission") is an instrumentality of the City which administers Philadelphia's Historic Preservation Ordinance (the "ordinance"). The Historical Commission's primary obligation is to "[d]esignate as historic those buildings, structures, sites and objects which the Commission determines, pursuant to the criteria set forth in Subsection (5) of [Section 14-2007], are significant to the City." Phila. Code S 14-2007(4)(a). The ordinance permits the Historical Commission to designate a building[1] as historic where at least one of ten enumerated criteria is met.

When a building is proposed for historic designation, the Historical Commission prepares a nomination form, which begins the process by which the Historical Commission considers buildings for designation. The nomination form details information regarding the building's historic, architectural, and cultural features. The Designation Committee of the Historical Commission (the "Designation Committee") is responsible for selecting which nominated

_____

1. We use the term "building" throughout this opinion because this case involves a building. However, our discussion of the designation of a building under the ordinance also encompasses the designation of structures, objects, complexes of buildings, and districts which, for the most part, are treated equally under the ordinance.

3

buildings the Historical Commission will consider for historic designation. When the Designation Committee recommends a building for preservation, it presents its report and recommendation to the Historical Commission at a hearing on the matter.

Pursuant to the ordinance, the owner of a building designated as historic may not demolish or alter that building without a permit from the Department of Licenses and Inspections ("Department of Licenses"). See Phila. Code S 14-2007(7)(a). If an owner desires such a permit, it applies to the Department of Licenses, which then forwards the application to the Historical Commission for review. An owner may obtain the permit where it is suffering "financial hardship" or the building "cannot be used for any purpose for which it is or may be reasonably adapted." Phila. Code S 14-2007(7)(f). The ordinance requires the Department of Licenses to grant the application if the Historical Commission has no objection but to deny the application if the Historical Commission does object. See Phila. Code S 14-2007(7)(g). Upon the denial of such a permit, the owner may appeal to the Board of License and Inspection Review (the "Board of License Review"). See Phila. Code S 14-2007(10).

B. Historic Designation of the Boyd Theater

Prior to 1988, Sameric owned the Boyd Theater2 on Chestnut Street in Philadelphia. The Historical Commission began to consider the Boyd Theater as a candidate for designation as historic in 1984 or 1985 by reason of discussions between members of the Historical Commission and the City of Philadelphia Planning Commission.

As a result, a staff employee of the Historical Commission prepared a nomination form for the Boyd Theater in January 1986. The nomination form detailed the Boyd Theater's notable features and included photographs and citations to publications concerning the theater. The completed nomination form was forwarded to the Designation Committee, which held a meeting to consider

_____

2. The theater was also known as the Sameric Theater.

4

the nomination. The Designation Committee decided unanimously to recommend to the Historical Commission that the Boyd Theater be designated as historic.

Following this vote, the Historical Commission sent Sameric a letter on March 28, 1986, indicating the Commission's intent to consider designating the theater. The letter notified Sameric that a hearing was scheduled for April 30, 1986, to consider the matter. At Sameric's request, the Commission postponed this hearing six times.

On January 27, 1987, Sameric attempted to prevent the Historical Commission from considering the proposed designation by filing an action in equity in the Court of Common Pleas of Philadelphia County seeking a temporary restraining order against the Historical Commission. The Court of Common Pleas stayed the Historical Commission's consideration of the proposed designation for 30 days. On January 30, 1987, the Historical Commission removed the suit to the United States District Court for the Eastern District of Pennsylvania on the grounds that some of the claims arose under the Constitution. The district court then granted the Commission's motion to dismiss Sameric's complaint.[3] See Sameric Corp. of Chestnut St., Inc. v. Philadelphia Historical Comm'n, Civ. A. No. 87–553, 1987 WL 7636, at *2 (E.D. Pa. Mar. 5, 1987).

Following the district court's dismissal of the complaint, the Historical Commission held a hearing on March 25, 1987, to consider the proposed designation of the Boyd Theater as historic. At the hearing, Commissioner David Brownlee, a member of the Designation Committee, presented the committee's recommendation and report. Although, during the hearing, Sameric's counsel repeatedly asked the Historical Commission to postpone the vote so

_____

3. The district court held that Sameric was not entitled to a preliminary injunction to prevent the Historical Commission from considering the designation of the theater because Sameric was not subject to an immediate threat. According to the court, the convening of a hearing did not in itself pose a threat to Sameric. Further, the court found that the potential designation would not harm Sameric, as only the subsequent denial of a permit required by virtue of the designation would pose a threat to Sameric.

that Sameric could present evidence, the Historical Committee voted to designate the Boyd Theater as historic, with only Commissioner John Street dissenting.

Later that day, Sameric requested the Court of Common Pleas to vacate the Historical Commission's decision and reschedule the hearing because the Commission did not properly notify Sameric of the hearing and because Sameric was not prepared to present certain evidence at the hearing. The court granted Sameric's request and ordered the Historical Commission to reconvene to hear the matter again. See Sameric Corp. of Chestnut St. v. City of Philadelphia, Civ. A. No. 4525 (Ct. C.P. Phila. County Mar. 25, 1987).

The Commission held the second hearing on April 2, 1987. At this hearing, Commissioner Brownlee again presented the Designation Committee's recommendation for designation and described the theater as a superb example of art deco. The Commissioner then presented a slide show detailing particular features of the theater, both interior and exterior. The Designation Committee's report emphasized that the building was an authentic example of art deco and that the building was "almost completely intact both on the interior and exterior." App. 54-55.

The president of Sameric, Merton Shapiro, then testified that many of the features which the Designation Committee emphasized, such as the ticket booth, entrancewayfloor, glass doors to the main lobby, mirrors, and the lobby ceiling, were not original. Shapiro presented slides of the building which illustrated the original appearance of the theater, both exterior and interior, and narrated the presentation, pointing out all the changes that he and others had made to the appearance of the theater. App. 163-69. Upon the completion of Shapiro's presentation, Richard Tyler, the Executive Director of the Historical Commission, acknowledged that Shapiro's presentation showed that there had been substantial changes to the appearance of the theater. Tyler also urged the Commission members to consider this evidence. App. 192.

The Historical Commission also heard testimony on behalf of Sameric from a partner of an architecturalfirm

6

regarding the authenticity of the Boyd Theater's art deco style. App. 183-87. According to the architect, the theater was not an architecturally notable building in either its original or present form. App. 184. In addition, the architect testified that of the 18 criteria enumerated in a scholarly treatise which identify the art deco style, the remaining portion of the Boyd Theater's original facade included only five. App. 184.

At the close of the evidence, the Historical Commission again voted to designate the Boyd Theater as historic, with only Commissioner Street again voting against the designation.

C. The State Court Proceedings

Following the designation of the Boyd Theater as historic, on April 24, 1987, Sameric filed a complaint in equity in the Court of Common Pleas in Philadelphia County against the City challenging the designation of the theater. The parties agreed that Sameric's suit should be construed as an appeal from the decision of a local agency pursuant to 2 Pa. Cons. Stat. Ann. S 752 (West 1995). See Sameric Corp. of Chestnut St., Inc. v. City of Philadelphia, 558 A.2d 155, 156 n.1. (Pa. Cmmw. Ct. 1989). The Court of Common Pleas dismissed the action, and the Commonwealth Court affirmed, holding that the evidence regarding the exterior was sufficient to support the designation and that the designation of the interior was within the authority of the ordinance. See id. at 156-57.

On appeal, the Supreme Court of Pennsylvania originally held that the historic designation of the Boyd Theater amounted to a taking without just compensation in violation of Article I, Section 10, of the Pennsylvania Constitution. See United Artists Theater Circuit, Inc. v. City of Philadelphia, 595 A.2d 6 (Pa. 1991).4 Thus, the court did not decide whether the designation was proper under the ordinance. One justice filed a concurring opinion stating

_____

4. Because Sameric sold its assets to United Artists in April 1988, the appellant was changed from Sameric to United Artists while the case was on appeal to the Supreme Court of Pennsylvania.

7

that the designation was improper under the ordinance because it was based on the interior of the building; thus, he found it unnecessary and imprudent to reach the state constitutional issue. See id. at 28 (Cappy, J., concurring).

The Supreme Court of Pennsylvania later granted rehearing and reconsidered the appeal. On rehearing, the court held that designating a privately owned building as historic did not automatically constitute an unconstitutional taking. See United Artists' Theater Circuit, Inc. v. City of Philadelphia, 635 A.2d 612, 620 (Pa. 1993) (hereinafter "United Artists' II"). However, the court also found that the ordinance does not permit designation based upon a building's interior, and therefore, the Historical Commission improperly designated the Boyd Theater to the extent the designation was based upon its interior. See id. at 622. Because the court found it impossible to separate the evidence so as to decide whether there was sufficient evidence based only on the exterior of the theater to support its designation, the court vacated the Historical Commission's designation of the Boyd Theater. See id.

Insofar as we are aware, the Commission has not redesignated the building as historic. While the court in United Artists' II did not in its opinion remand the case to the Common Pleas Court, according to Sameric it is seeking damages in the Common Pleas Court attributable to the designation of the Boyd Theater as historic.

D. Sameric's Application for a Demolition Permit

On April 8, 1987, six days after the Historical Commission designated the Boyd Theater as historic, Sameric filed an application for a demolition permit for the theater, which was transferred immediately to the Historical Commission for review. On April 9, 1987, the Architectural Review Committee of the Historical Commission held a brief hearing on Sameric's application. The Historical Commission then postponed consideration of the application until August 26, 1987. At a series of meetings, the Historical Commission considered evidence and, on December 2, 1987, it voted to deny Sameric's application for a demolition permit. On February 2, 1988, the Historical

8

Commission issued its Findings of Fact and Decision.
Pursuant to the ordinance, the Department of Licenses
denied the permit based upon the Historical Commission's
objection to it. See Phila. Code S 14-2007(7)(g).

On December 15, 1987, Sameric appealed the denial of
its application for a demolition permit to the Board of
License Review. In April 1988, Sameric sold all of its
theaters, including the Boyd, to United Artists Theater
Circuit, Inc. Under the terms of the sale, Sameric retained
its claims for damages resulting from the historic
designation of the theater. After selling the property,
Sameric abandoned its appeal of the denial of the permit.
Thus, the Board of License Review never concluded its
hearings or rendered a decision on Sameric's appeal.

E. The District Court Proceedings

In November 1995, Sameric instituted this suit in the
United States District Court for the Eastern District of
Pennsylvania against the City, the Historical Commission,
and various individual defendants who were the Executive
Director and Commissioners of the Historical Commission,
in their individual and official capacities. Consequently, in
the course of this opinion, depending upon our context, our
references to the City may include all of the defendants.
Sameric's complaint asserted claims pursuant to 42 U.S.C.
S 1983 for violations of its federal substantive and
procedural due process rights as well as a civil conspiracy
claim against all defendants. In addition, Sameric alleged
that the defendants violated various rights secured under
the Pennsylvania Constitution.

As a result of these alleged violations, Sameric asserts
that its business was injured and that its property was
reduced in value. In particular, Sameric alleges that
beginning in late 1986, after the commencement of the
designation proceedings, it was unable to obtainfinancing
because the proposed designation of the theater would
reduce the value of the property significantly. Thus,
beginning in 1987, Sameric no longer could afford to obtain
quality films for its theaters. Sameric contends that
ultimately it was forced to sell its entire holdings because

9

of its financial difficulties, and because of the historic designation it received substantially less than fair market value for the theater.

The district court dismissed Sameric's procedural due process claim in February 1996, but Sameric does not appeal from this dismissal.5 At the close of discovery, on July 14, 1997, the district court granted the defendants' motion for summary judgment on the remainder of Sameric's claims. First, in an order from which Sameric does not appeal, the district court dismissed all claims against the Historical Commission because Sameric conceded that it was not a proper defendant. See Sameric Corp. of Del., Inc. v. City of Philadelphia, Civ. A. No. 95-7057, 1997 WL 399374, at *3 n.5 (E.D. Pa. July 14, 1997). Second, the district court found that, as a matter of law, the City was within its authority to designate the Boyd based on its future cultural value if converted to live performance space. The district court's subsequent holdings were based upon this finding. In particular, the district court held that (1) Sameric did not raise a genuine issue of material fact as to whether the defendants acted arbitrarily or with an improper motive in designating the Boyd Theater as historic; (2) the claims based upon the City's subsequent denial of Sameric's application for a demolition permit were not ripe; and (3) the individual defendants were entitled to immunity with respect to both the federal claims and those arising under the Pennsylvania Constitution. Sameric filed a timely notice of appeal from this order.

_____

5. The district court dismissed Sameric's procedural due process claims for failure to state a claim. See Sameric Corp. of Del., Inc. v. City of Philadelphia, Civ. A. No. 95-7957, 1996 WL 47973, at *4 (E.D. Pa. Feb. 2, 1996). The district court held that Pennsylvania provided a judicial mechanism permitting Sameric to challenge the designation of the Boyd Theater. See id. In particular, the district court noted that the parties agreed that the state court action should be treated as an appeal of the designation. See id.

10

III. DISCUSSION

A. Substantive Due Process

Sameric's complaint asserts a 42 U.S.C. S 1983 claim
that the Historical Commission's designation of the Boyd
Theater as historic and its subsequent denial of the
demolition permit violated Sameric's substantive due
process rights. According to Sameric, the defendants, in
taking these actions, were motivated by the ultra vires
purpose of obtaining a venue for live performances and,
notwithstanding this purpose, they acted without factual
support thus rendering their actions arbitrary and
irrational. The district court granted defendants' motion for
summary judgment, holding that it was proper under the
ordinance to designate the theater based upon its potential
as a performance space and that Sameric therefore failed to
establish that there was a genuine issue of material fact
that the defendants acted either with an improper motive or
without a rational basis.6

We exercise plenary review of the district court's grant of
summary judgment. See City of Erie v. Guaranty Nat'l Ins.
Co., 109 F.3d 156, 159 (3d Cir. 1997). We will affirm the
summary judgment if, after a plenary review of the record,
we find that there is no genuine issue of material fact for
trial and the moving party is entitled to judgment as a

_____

6. In the alternative, the district court held that the individual
defendants were entitled to qualified immunity from the federal claims
because they were following their own reasonable interpretation of the
ordinance. Given our conclusion that Sameric has not established a
violation of a constitutional right, we need not consider the immunity
issue. See Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793
(1991) (stating that in considering whether a defendant is entitled to
qualified immunity, a court first should consider whether the plaintiff
has alleged a violation of a constitutional right).

We note, however, that, in the context of land-use decisions, this court
has recognized the importance of broadly granting immunity to members
of local boards to allow them to make decisions without the threat of
being sued by every disgruntled applicant. See Bass v. Attardi, 868 F.2d
45, 50 & n.11 (3d Cir. 1989) (citing Anastasio v. Planning Bd. of Twp. of
W. Orange, 507 A.2d 1194, 1208 (N.J. Super. Ct. App. Div. 1986)).

11

matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10 (1986); Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., 998 F.2d 1224, 1230 (3d Cir.1993). An issue is "genuine" if the evidence permits a reasonable jury to return a verdict for the non–moving party, accepting its evidence as true and drawing all justifiable inferences from the evidence in its favor. See Anderson, 477 U.S. at 248, 255, 106 S.Ct. at 2510, 2513.

Section 1983 is not a source of substantive rights, but provides a remedy against state officials for violations of constitutional rights. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 2432 (1985) (plurality opinion); Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 2694–95 n.3 (1979). The initial inquiry in a section 1983 suit is (1) whether the conduct complained of was committed by a person acting under color of state law7 and (2) whether the conduct deprived the complainant of rights secured under the Constitution or federal law. See West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55 (1988); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995).

To establish a substantive due process claim, a plaintiff must prove that it was deprived of a protected property interest by arbitrary or capricious government action. See Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1290 (3d Cir. 1993). Because the defendants conceded in the district court that Sameric had a property interest sufficient to invoke the protections of substantive due process, the only issue on this point is whether the City unconstitutionally deprived Sameric of that interest. A substantive due process violation is established if "the government's actions were not rationally related to a legitimate government interest" or " `were in fact motivated

_____

7. There is no dispute that the defendants herein are "persons" acting under color of state law. The City is subject to section 1983 liability for
injuries caused by its official policies and customs, see Monell v. Department of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38 (1978), and actions by the Historical Commission, one of its agencies, constitute such official policies, see Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298 (1986).

by bias, bad faith or improper motive.' " Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 692 (3d Cir. 1993) (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 683 (3d Cir. 1991)); see also Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 (3d Cir. 1997) (government's deliberate and arbitrary abuse of authority violates substantive due process); Bello v. Walker, 840 F.2d 1124, 1129-30 (3d Cir. 1988) (same). The former inquiry is a question of law for the court whereas, if there is a genuine dispute of fact, the latter is a question for resolution by the jury. See Parkway Garage, 5 F.3d at 692.

1. Designation of the Boyd Theater

a. Improper Motive

Sameric alleges that the City designated the Boyd Theater based on its desire to procure live performance space, a consideration not within its authority under the ordinance, which thus was an improper motive. However, because the district court construed the ordinance to permit historic designation based on that consideration, the district court found that Sameric failed to establish a genuine issue as to whether the City acted with an improper motive. Sameric contends that the district court erred in its interpretation of the ordinance and therefore concludes that the district court erred in granting summary judgment because it based its determination upon an erroneous interpretation of the ordinance. Although we agree that the district court erred in its interpretation of the ordinance and its analysis of the allegedly improper purpose thereby is flawed, we will affirm the grant of summary judgment for the following reasons.

Our disposition of this issue involves three inquiries: (1) whether the consideration of the potential uses and future cultural value of a building is improper under the ordinance; and, if so, (2) whether Sameric presented evidence which creates an issue of fact as to whether the Commission was motivated by such considerations; and (3) whether the Commission acted with an "improper purpose"

13

under substantive due process principles in considering criteria unauthorized under state law. We will discuss these inquiries in turn.

Under the ordinance, a building may be designated as historic if it:

(a) Has significant character, interest or value as part of the development, heritage or cultural characteristics of the City, Commonwealth or Nation or is associated with the life a person significant in the past; or

(b) Is associated with an event of importance to the history of the City, Commonwealth or Nation; or,

(c) Reflects the environment in an era characterized by a distinctive architectural style; or,

(d) Embodies distinguishing characteristics of an architectural style or engineering specimen; or,

(e) Is the work of a designer, architect, landscape architect or designer, or engineer whose work has significantly influenced the historical, architectural, economic, social, or cultural development of the City, Commonwealth or Nation; or,

(f) Contains elements of design, detail, materials or craftsmanship which represent a significant innovation; or,

(g) Is part of or related to a square, park or other distinctive area which should be preserved according to an historic, cultural or architectural motif; or,

(h) Owing to its unique location or singular physical characteristic, represents an established and familiar visual feature of the neighborhood, community or City; or,

(i) Has yielded, or may be likely to yield, information important in pre-history or history; or,

(j) Exemplifies the cultural, political, economic, social or historical heritage of the community.

Phila. Code S 14-2007(5). In addition, the ordinance announces the following purposes:

14

> (.1) preserve buildings, structures, sites and objects which are important to the education, culture, traditions and economic values of the City; . . .
>
> (.5) strengthen the economy of the City by enhancing the City's attractiveness to tourists and by stabilizing and improving property values;

Phila. Code S 14-2007(1)(b).

Relying on the first enumerated criterion and thefirst and fifth stated purposes, the district court found that the ordinance is "broad enough to protect the possible cultural and economic gains which could accrue from preserving a theater of this size." Sameric Corp. of Del., Inc. v. City of Philadelphia, 1997 WL 399374, at *4. Thus, the court found that to the extent the Commission based its decision upon economic and cultural interests, it acted permissibly under the ordinance and noted that the ordinance was "not so narrow that it precludes historic designation based on either the size of the theater or its suitability as a performance venue." Id.

We agree with the district court to the extent that it found that the ordinance permits consideration of cultural and economic factors. The plain language of the ordinance clearly refers to such considerations, see Phila. Code S 14-2007(1)(b)(.1) & (.5), and the ordinance declares a broad public policy to preserve the "historic, architectural, cultural, [and] aesthetic" merit of buildings. See Phila. Code S 14-2007(1)(a). In addition, the ordinance requires that the Historical Commission be composed of individuals with diverse expertise, emphasizing the concern for the culture, economy, and development of the City.[8] See Phila. Code S 14-2007(3). We, however, cannot agree that the ordinance permits designation based upon the potential value of the theater if converted to a live performance venue.

_____

8. The ordinance requires that the Historical Commission be composed, inter alia, of the Director of Commerce, the Chairman of the City Planning Commission, a real estate developer, a representative from a community development corporation, and a representative from a community organization.

15

Under Pennsylvania law, " `the power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist.' " United Artists' II, 635 A.2d at 622 (quoting Pennsylvania Human Relations Comm'n v. St. Joe Minerals Corp., 382 A.2d 731, 735-36 (Pa.1978)). Because we find that the plain language of the ordinance does not confer clear and unmistakable authority to designate a building based upon its potential, future cultural value, we hold that the Historical Commission does not possess such authority.

The enumerated purpose of the statute which relates most directly to the culture of the City, see Phila. Code S 14-2007(1)(b)(.1), speaks in terms of the present importance of the building to the City's culture. More importantly, the criteria enumerated in the ordinance conspicuously and consistently refer to the value of a building in the present tense. In particular, the first enumerated criterion for historic designation, upon which the City primarily relies, allows designation where the building "has significant . . . value as part of the development . . . of the City." Phila. Code S 14-2007(5)(a). The City argues that this criterion encompasses a designation where, as here, the Historical Commission finds that a building, if converted to a use for which it is suitable, would further a plan for the development of the City.

We disagree. While the "development" of the City necessarily refers to the future of the community, the ordinance only refers to the present value of a building, which is on its face limited to a consideration of the present condition of a building. The ordinance clearly permits the Historical Commission to consider the future in only one instance, which is not applicable here -- the possibility that a building will yield important information. See Phila. Code S 14-2007(5)(i). Thus, the ordinance does not clearly permit the Historical Commission to consider potential uses of a building in evaluating its value.

In addition, our interpretation follows the lead of the Pennsylvania Supreme Court's interpretation of this ordinance. To our knowledge, the state court proceedings in

16

this dispute, culminating in a decision by that court, have generated the only published judicial interpretation of this ordinance. It is axiomatic that the highest court of a state is the final arbiter of that state's law. See West v. American Tel. & Tel. Co., 311 U.S. 223, 236, 61 S.Ct. 179, 183 (1940). Thus, although the Pennsylvania Supreme Court has not addressed the precise issue which we now consider, we give great weight to its interpretation of this ordinance in United Artists' II. We find that the district court's interpretation is inconsistent with the Pennsylvania Supreme Court's interpretation of the ordinance, namely that the Historical Commission has no authority to designate a building on the basis of its interior.

In United Artists' II, the court held that "[t]he Historical Commission is not explicitly authorized by statute to designate the interior of the building as historically or aesthetically significant." United Artists' II, 635 A.2d at 622. The court began its analysis by noting the "clear and unmistakable" language standard in Pennsylvania administrative law. See id. The court then turned to the language of the ordinance and found that the only reference to the interior of the building in Phila. Code S 14-2007 is in the subsection which imposes upon the owner of a historic building the duty of care. See id. Because the language in that section concerns the interior only for the express purpose of supporting the exterior, the court found that it was beyond the Historical Commission's authority to designate a building based upon its interior.9 See id.

We find that, if the ordinance does not permit historic designation based upon an historic or aesthetic feature of the interior of a building, it necessarily does not permit designation based upon the cultural value or potential uses of the interior. This conclusion, in addition to our own

_____

9. Section 14-2007(8)(c) provides that

    [t]he exterior of every historic building, structure and object and
of
    every building, structure and object located within an historic
    district shall be kept in good repair as shall the interior
portions of
    such buildings, structures and objects, neglect of which may cause
    or tend to cause the exterior to deteriorate, decay, become damaged
    or otherwise fall into a state of disrepair.

17

interpretation of the plain language of the ordinance, leads us to the determination that the district court erred in its interpretation of the ordinance. This determination, however, does not end our inquiry. We also must consider whether Sameric established a genuine issue as to whether the Historical Commission was motivated by such a consideration, and, if such an issue exists, whether, as a matter of law, that motivation would constitute an "improper motive" under substantive due process jurisprudence.

Citing primarily the testimony of one of the Commissioners, Barbara Kaplan, Sameric contends that it has produced evidence which creates a genuine issue of fact regarding the motivation of the Historical Commission in voting to designate the Boyd Theater. In her comments at the designation hearing and her deposition testimony, Commissioner Kaplan expressed her interest in the theater as cultural space, admitted that she considered potential uses of the theater, and stated that she was aware of the community's need for live performance space.

We have held that evidence regarding the intentions of single member of a zoning board can create a genuine issue of fact as to the board's motive. See DeBlasio v. Zoning Bd. of Adjustment for the Twp. of W. Amwell, 53 F.3d 592, 602 (3d Cir. 1995) (evidence that one member of the zoning board acted for personal reasons was sufficient to create a genuine issue as to whether the board's decision was influenced by that member's personal interest, and thus acted with an improper motive). Thus, given the evidence of Commissioner Kaplan's motivation, we assume without deciding that this evidence creates a genuine issue of fact regarding whether the Historical Commission was motivated by the Boyd Theater's potential use and cultural value as performance space.

However, only issues of material fact preclude entry of summary judgment. As the Supreme Court has stated, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. Because this motive is

18

not improper under substantive due process law, this issue of fact is not material, and summary judgment was proper.

On this issue, at the outset we note that Sameric has not established, or for that matter even alleged, that the Historical Commission's decision to designate the building was motivated by personal gain, individuous discriminatory intent, or partisan political considerations, the presence of which we have found establish substantive due process claims based upon improper motive. See, e.g., DeBlasio, 53 F.3d at 601 (personal financial interest); Parkway Garage, 5 F.3d at 697 n.6 (economic motivation); Bello, 840 F.2d at 1129 (partisan political or personal reasons); see also Grant v. City of Pittsburgh, 98 F.3d 116, 119 (3d Cir. 1996) (alleging that the defendants were motivated by partisan politics in designating an area as historic as they intended to thwart plaintiffs' development project so that the mayor would not receive credit for the resulting economic benefits).

Rather, Sameric proffers that the City's improper motive was its ultra vires reliance on procuring live performance space for the community. As discussed above, we find that the City did exceed its authority to the extent that it based its decision upon such a motivation. This error, however, is only one of law, and such an error is not sufficient in itself to establish a substantive due process claim. See Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 402 (1944); Midnight Sessions, 945 F.2d at 684 (stating that federal courts are not in the business of granting federal "remedies for mere violations of state law"); Archie v. City of Racine, 847 F.2d 1211, 1216-18 (7th Cir. 1988) (en banc) (holding that a violation of state law does not amount to a violation of due process).

We recognize that, to prove a substantive due process claim, a plaintiff need not establish in every case that the defendants sought to advance personal interests. See Parkway Garage, 5 F.3d at 697 n.6. We find, however, that Parkway Garage does not lend Sameric support beyond that point. In Parkway Garage, the plaintiff alleged that the City violated its substantive due process rights by prematurely and unjustifiably terminating its lease and closing the garage that the plaintiff managed on the

19

property. See id. at 689-91. While the City contended that its actions were in furtherance of the public safety to avoid the imminent collapse of the plaintiff's parking garage, the plaintiff presented evidence that this alleged motivation was a pretext. See id. at 693-94. Rather, according to the plaintiff, the City was motivated economically because the property was more valuable to the City without the encumbrance of the plaintiff's lease. Thus, we held that if the plaintiff proved that the defendants where driven by the economic benefit to the City, such a motivation would establish an improper motive sufficient to sustain a substantive due process claim. See id. at 699.

There is no allegation here that the City sought to advance its direct economic position in designating the theater. Thus, this case differs fundamentally from Parkway Garage in which the City owned property involved in the case. Taken in the light most favorable to Sameric, the evidence supports an inference that the Historical Commission considered the potential uses of the Boyd Theater, which the Commission believed could fill a void in the community. There is not sufficient evidence, however, that the City was in a position to realize the type of direct economic gain alleged in Parkway Garage. Thus, we find that Sameric has not produced evidence of an "improper motive."10

b. Arbitrary and Irrational Government Action

As an independent basis for its substantive due process claim, Sameric also alleges that the City acted arbitrarily and irrationally in designating the Boyd Theater. Relying again on its interpretation of the ordinance, the district court concluded that because a designation as historic may be based upon its "significant interest or value to the

_____

10. Our conclusion that summary judgment was appropriate in this case is not at odds with the notion that the determination of whether defendants were motivated by bias, personal interest, or other improper motive is, if there is a genuine dispute of fact, a question of fact for the
jury. See Parkway Garage, 5 F.3d at 692, 697 n.6. Here, we conclude that the particular motive which Sameric alleged is not improper as a matter of law.

development of the City," Sameric Corp. of Del., Inc. v. City of Philadelphia, 1997 WL 399374, at *5, Sameric did not present evidence which creates a genuine issue of fact that the defendants lacked a rational basis for designating the Boyd Theater as historic. Sameric contends that because the district court based its holding on a misinterpretation of state law, we should reverse the grant of summary judgment. Again, although we agree that the district court erred in its interpretation of the ordinance, we find that Sameric has not produced sufficient evidence from which a jury could find arbitrary and irrational government conduct.

We have held that, in the context of a land-use decision, "the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process." Bello, 840 F.2d at 1129 (declining to define the "outer limits of the showing necessary to demonstrate" arbitrary and irrational governmental action because the plaintiff adduced evidence that the decision was based upon "partisan political or personal reasons unrelated to the merits of the application for the permits"); see also DeBlasio, 53 F.3d at 601. Government conduct is arbitrary and irrational where it is not rationally related to a legitimate government purpose. See Parkway Garage, 5 F.3d at 692; Midnight Sessions, 945 F.2d at 692; Pace Resources, Inc. v. Shrewsbury Twp., 808 F.2d 1023, 1035 (3d Cir. 1987).

Our review of a locality's land-use decision asks whether the locality "could have had a legitimate reason for its decision." Pace, 808 F.2d at 1034, 1035 (citing Shelton v. City of College Station, 780 F.2d 475, 483 (5th Cir. 1986) (en banc) (holding that "federal judicial interference with a state zoning board's quasi-legislative decisions, like invalidation of legislation for `irrationality' or `arbitrariness,' is proper only if the governmental body could have no legitimate reason for its decision")). Thus, in Pace, we found that summary judgment for the defendant was appropriate because the township "could have had rational reasons for" its land-use decision relating to the property owner's development plan "and because th[e] complaint allege[d] no facts suggesting arbitrariness." Id. at 1036. In holding that

21

the plaintiff in Pace did not allege sufficiently a substantive due process violation, we also noted that it did "not present a case involving actions aimed at this developer for reasons unrelated to land use planning." Id. at 1035.

In Pace, we cited with approval Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir. 1982), which we again find persuasive. In Creative Environments, the plaintiff alleged that the town frustrated the plaintiff's development plans by "distorting" state law. See id. at 829. The court held that the plaintiff did not establish a constitutional violation and noted that "[t]his would be true even were planning officials to clearly violate . . . the state scheme under which they operate." Id. at 833 (footnote omitted). According to the court, the case was an average dispute between a property owner and the local zoning body and every developer's challenge to a land-use decision necessarily involves some claim that the board exceeded or abused its legal authority. See id.; see also Anastasio v. Planning Bd. of Twp. of W. Orange, 507 A.2d 1194, 1206 (N.J. Super. Ct. App. Div. 1986) ("Accordingly while the words `arbitrary and capricious' may sound harsh, they are simply the standard of appellate review in particular cases.").

As in Pace, Sameric has not presented a claim that the City acted for reasons "unrelated to land use planning." We again note that in undertaking this analysis, we consider the action without regard for whether it was sanctioned legislatively. See Snowden, 321 U.S. at 11, 64 S.Ct. at 402. In Snowden, the plaintiff alleged that the state primary election board deprived him of due process and equal protection because it refused to certify him as a candidate, in violation of state law. See id. at 2-5, 64 S.Ct. at 398-99. In Snowden, the Court stated that

> [i]f the action of the Board is official action it is subject to constitutional infirmity to the same but no greater extent than if the action were taken by the state legislature. Its illegality under the state statute can neither add to nor subtract from its constitutional validity. Mere violation of a state statute does not infringe the federal Constitution. And state action, even though illegal under state law, can be no more and no

22

less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature.

Id. at 11, 64 S.Ct. at 402 (citations omitted).

Because our substantive due process analysis does not depend on the legality vel non of the City's action under state law, our inquiry here is essentially the inquiry in which we would engage if the City's ordinance had provided explicitly for designation based upon the potential use of a building and such an ordinance was challenged on substantive due process grounds. In short, the proper inquiry is whether the City's decision to designate the Boyd Theater based upon its potential use and cultural value if converted to live performance space is rationally related to land-use planning.[11]

We find that it is rationally related to the legitimate government objective of land-use planning for the City to designate buildings that have potential use to the community. We recognize that an ordinance conferring such authority would grant broad power to a local board, and in so holding we make no comment on the wisdom of such a rule, but decide only that we see no reason why conferring such authority would be constitutionally infirm under substantive due process law.

As suggested above, Sameric's allegations are very similar to those that the Court of Appeals for the First Circuit found insufficient in Creative Environments. As did the plaintiff in that case, Sameric presents a claim in the

_____

11. The majority of Sameric's brief on this issue is devoted to arguing that the City's action in designating the theater was without factual basis and therefore amounts to arbitrary and irrational government conduct. Thus, Sameric reviews the "extensive" evidence presented against designation to the Historical Commission.

We recognize that there is evidence to suggest that the Boyd Theater is not as architecturally significant as the Designation Committee presented. There is also evidence from which a jury could infer that the Historical Commission was predisposed to designate the theater. This argument, however, focuses on whether there was sufficient evidence to support the designation based upon criteria other than the potential cultural value of the Boyd if converted to a live performance space. This is not the appropriate inquiry here.

nature of an average dispute between a property owner and local zoning officials. Thus, as we have in the past, we emphasize here our reluctance to substitute our judgment for that of local decision-makers, particularly in matters of such local concern as land-use planning, absent a local decision void of a "plausible rational basis." Pace, 808 F.2d at 1035. We decline to federalize routine land-use decisions. Rather, the validity of land-use decisions by local agencies ordinarily should be decided under state law in state courts. After all, surely it would be strange to hold that the City had no rational basis for designating the theater when the Common Pleas Court, the Commonwealth Court, and the district court all thought that its designation was valid.12

2. Denial of Demolition Permit

Sameric also alleges that the City violated its substantive due process rights in improperly denying its application for a demolition permit, although it does not state this claim separately from the claim based on the historic designation. Nonetheless, we, like the district court, will treat Sameric's allegations regarding the denial of the demolition permit as if they asserted a separate factual predicate for a substantive due process violation.

a. Ripeness

The district court granted summary judgment in favor of the defendants on the substantive due process claim based upon the City's denial of a demolition permit, finding that such a claim was not ripe. In particular, the district court held that because Sameric did not complete its appeal of the denial, there was never a final denial of the permit application. We exercise plenary review over the district

_____

12. Our conclusion does not necessarily mean that Sameric will not receive damages by reason of the historic designation of its property as it explains in its brief that it "has intervened[in the Common Pleas Court] for the purpose of seeking an assessment of damages as a result of the decision by the Supreme Court of Pennsylvania" in United Artists' II. Of course, we hasten to add our opinion does not depend on whether Sameric makes a recovery in the state court.

24

court's ripeness determination. See Taylor, 983 F.2d at 1289.

It is well established that, in cases involving land-use decisions, a property owner does not have a ripe, constitutional claim until the zoning authorities have had "an opportunity to `arrive[ ] at a final, definitive position regarding how [they] will apply the regulations at issue to the particular land in question.' "13 Id. at 1291 (quoting Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 191, 105 S.Ct. 3108, 3119 (1985)). Thus, we have held that property owners' constitutional claims based upon land-use decisions were premature where the owners or tenants were denied permits by the initial decision-makers but did not avail themselves of available, subsequent procedures. See Acierno v. Mitchell, 6 F.3d 970, 974-75 (3d Cir. 1993) (owner was denied building permit by Development and Licensing Division, but did not appeal the denial to the Board of Adjustment or seek a variance); Taylor, 983 F.2d at 1289 (owner complained of the zoning officer's revocation of tenant's use permit where the tenant did not reapply, appeal to the zoning board, or seek a variance); Midnight Sessions, 945 F.2d at 686 (holding that the plaintiff's claim was not ripe where it did not appeal the denial of a certificate of occupancy to the review board).

In Acierno and Taylor, the property owners challenged the denial and revocation of permits, respectively. In Acierno, the county approved the property owner's building plan, of which compliance with zoning ordinances is a prerequisite, but denied the owner's application for a building permit, citing noncompliance with zoning ordinances. See Acierno, 6 F.3d at 976. In Taylor, the zoning officer revoked a tenant's use permit because the tenant included false information in his application for the permit. The owner asserted that the basis for the revocation was a pretext and that the officer knew of the intended use for the property.

_____

13. We again note that this finality requirement is not at odds with the notion that section 1983 claims are not subject to an exhaustion of remedies requirement. See Taylor, 983 F.2d at 1291 n.10 (citing Williamson, 473 U.S. at 192-94, 105 S.Ct. at 3119-120).

See Taylor, 983 F.2d at 1289-90. Thus, in Acierno and Taylor the property owners alleged harm resulting from a land-use decision adverse to them.

In both cases, we held that the claims were not ripe because the property owners or the tenant did not give the locality an opportunity to make a final determination regarding how to construe the applicable ordinances and apply them to the particular property. The same is true here, where Sameric claims that the local land-use decision was based on an erroneous application or interpretation of the local ordinance. In addition, as in Acierno and Taylor, the applicable ordinance explicitly subjects the initial decision to review by another body, which owes no deference to the initial decision-maker. See Acierno, 6 F.3d at 972, 976; Taylor, 983 F.2d at 1292-93. 14 Thus, we find that the Department of Licenses' denial was not the City's final determination of Sameric's rights to a demolition permit under the ordinance.

Sameric urges that Acierno and Taylor are distinguishable, and therefore the ripeness requirement should not apply to its claim. According to Sameric, the property owners in those cases alleged harm resulting from the denial of a permit, whereas Sameric alleges harm resulting from the designation itself. We acknowledge that Sameric alleges harm resulting from the designation itself, but it also alleges that the City improperly denied its application for a demolition permit. To the extent Sameric's substantive due process claim is based upon the latter, Acierno and Taylor apply, rendering that portion of Sameric's claim not ripe.

Sameric also contends that Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253 (3d Cir. 1995), where we refused to apply the finality requirement, applies here. We disagree. In Blanche Rd., we further explained the confines of these cases requiring a final decision by the local authority regarding a land-use decision. There, the plaintiff claimed that the local authority abused its power in a conspiracy to halt the development of its property because

_____

14. We do not imply that our result would have been different if the administrative standard of review had been deferential.

26

of the authority's distaste for its plan. After noting that Acierno involved a claim based upon the merits of the land-use decision, we found that the property owner's claim in Blanche Rd. was substantively different because it was not based on the township's adverse decision, but on its intentional and improper delay of the process. Inasmuch as an improper delay could result in damages notwithstanding the ultimate grant of a permit, we declined to apply the finality requirement because a review of the permit decisions was not necessary to resolve the dispute. See id. at 267-68.

In addition, a portion of the owner's claims related to two lots to which the owner never exercised its option to purchase and for which the owner never sought a building permit because it abandoned the development project. We held that if the owner's allegations of intentional and improper delay were proven, even if the permit ultimately were granted, an arbitrary and intentional delay could cause damages. See id. at 268. Thus, we found that the plaintiff's claims were ripe, even to the extent they were based upon damages allegedly suffered with respect to these two lots. See id.

We reject Sameric's argument that Blanche Rd. applies here. According to Sameric, the finality requirement should not apply because, as in Blanche Rd., a favorable decision by the Board of License Review would not have prevented Sameric from incurring the damages it now seeks to recover. Sameric admits, however, that the grant of the permit would have reduced its damages. Accordingly, to the extent that Sameric's claims are based upon the City's denial of a building permit, they are not ripe. Moreover, an ordinary lapse of time required for the processing of an appeal from the denial of a permit does not permit a plaintiff to recast a case as a delay claim; for if it did the ripeness requirement effectively would be eliminated.

We again stress the importance of the finality requirement and our reluctance to allow the courts to become super land-use boards of appeals. Land-use decisions concern a variety of interests and persons, and local authorities are in a better position than the courts to assess the burdens and benefits of those varying interests.

27

See Taylor, 983 F.2d at 1291. Judicial review of the City's denial of Sameric's application for a demolition permit would be inappropriate because it would permit Sameric to have denied the City the opportunity to render a final decision regarding how to interpret and apply the ordinance. See id. at 1292.

Thus, we find that the district court properly held that the claim based upon the denial of the demolition permit was not ripe. Ordinarily, because a ripeness determination concerns the justiciability of a claim, which the district court should resolve on a motion to dismiss rather than on a motion for summary judgment, where this courtfinds that the district court properly held that the plaintiff's claim is not ripe, this court should vacate the grant of summary judgment and remand to the district court with instructions to dismiss the claim. See Taylor, 983 F.2d at 1290 (citing Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 508 (9th Cir. 1990)); see also Acierno, 6 F.3d at 971. Here, however, we see no reason to disturb the grant of the summary judgment as Sameric's abandonment of its appeal from the denial of the demolition permit after it sold the property ensures that its claim based on the denial never can be ripe. Thus, in this case Sameric's claim with respect to the denial of the demolition permit is not simply "premature," see Taylor, 983 F.2d at 1287, rather, it never will ripen. We thus would require the parties to waste their time if we remanded the case for the district court to convert the summary judgment into an order of dismissal.

b. Statute of Limitations

Even if this claim were ripe, we would affirm the dismissal of Sameric's claim based upon the denial of the demolition permit because it is barred by the statute of limitations. Although the City apparently raised this argument in its motion for summary judgment, the district court did not reach this issue in view of its conclusion that any claim based upon that denial was not ripe for judicial consideration.

In actions under 42 U.S.C. S 1983, federal courts apply the state's statute of limitations for personal injury. See

Wilson v. Garcia, 471 U.S. 261, 276-78, 105 S.Ct. 1938, 1947-48 (1985); 287 Corporate Ctr. Assocs. v. Township of Bridgewater, 101 F.3d 320, 323 (3d Cir. 1996). Thus, because Pennsylvania's statute of limitations for personal injury is two years, see 42 Pa. Cons. Stat. Ann. S 5524 (West Supp. 1997), Sameric's due process claims are subject to a two-year statute of limitations. See Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).

A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based. See de Botton v. Marple Twp., 689 F. Supp. 477, 480 (E.D. Pa. 1988). According to the City, the very last date that a cause of action based upon the denial of the permit could have accrued was in 1988 when Sameric abandoned its appeal to the Board of License Review. Because Sameric did not institute this suit until 1995, the City concludes that the statute of limitations bars this action.

Sameric contends, however, that the "continuing wrong" doctrine, which tolls the statute of limitations, renders its claim based upon the denial of the demolition permit timely. Under this doctrine, a federal cause of action based upon the defendant's continuing conduct is timely provided that the last act of that continuing conduct is within the period for the commencement of an action specified by the statute of limitations. See 287 Corporate Ctr. Assocs., 101 F.3d at 324 (quoting Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)). In applying the doctrine, this court focuses on the affirmative acts of the defendant. See id.

Sameric urges this court to find that its claim was tolled by its challenges to the designation of the theater in the state court. Sameric bases its argument largely on the district court's ruling, from which the City does not appeal, regarding the timeliness of its claims. The district court, ruling on a motion to dismiss in this case, held that Sameric's substantive due process claims based upon the designation of the theater were not barred by the statute of limitations. See Sameric Corp. of Del., Inc. v. City of Philadelphia, Civ. A. No. 95-7057, 1996 WL 47973 (E.D. Pa. Feb. 2, 1996). The district court found that the cause of

29

action accrued on April 14, 1987, the date on which the Historical Commission officially notified Sameric of the designation, but found that the "continuing wrong" doctrine tolled the running of the statute of limitations. See id. at *3. The district court held that because Sameric was diligent in pursuing its claim with respect to the invalidity of the designation and the defendants continuously opposed Sameric's challenges in state court, the doctrine applied. Thus, Sameric's complaint, filed on November 8, 1995, was timely because it was filed within two years from the end of the state court litigation on November 9, 1993. See id. at *4.

We cannot agree that the result is the same here. We acknowledge that an historic designation factually underlies every cause of action based upon the denial of a demolition permit required by the ordinance because a demolition permit is only necessary under the ordinance where a building has been historically designated. In that sense alone a claim based upon a denial of a demolition permit is dependent upon the designation. The ordinance establishes procedures regarding applications for demolition permits separate from those concerning the historic designation of a building. Moreover, because the ordinance sets forth separate standards for historic designation and for the issuance of a demolition permit, the propriety of the City's denial of a demolition permit under the ordinance is independent from the propriety of the designation itself. Thus, a cause of action based upon an improper denial of a demolition permit exists regardless of the validity of the underlying historic designation.

Although Sameric diligently objected to the designation of the theater in state court, it abandoned its appeal of the denial of the demolition permit sometime in 1988 after selling the theater to United Artists. In addition, Sameric instituted its state court proceedings challenging the historic designation of the Boyd Theater prior to the Historical Commission's denial of its application for a demolition permit.15 Thus, because the two claims are

_____

15. Sameric instituted its state court challenge to the designation on April 24, 1987, see app. 845, and the Historical Commission denied its permit application on December 2, 1987.

independent, application of the "continuing wrong" doctrine, as urged by Sameric, would be inappropriate here as its diligence did not relate to pursuing the permit. To the contrary, it abandoned its attempt to obtain the permit many years before it filed this action. Based upon the foregoing, we hold that the "continuing wrong" doctrine does not apply to toll the running of the statute of limitations with respect to Sameric's claim based upon the denial of its permit application.

B. Pennsylvania Constitutional Claims

Sameric's complaint also alleges that the defendants' conduct deprived it of "the equal protection and[its] rights, privileges and immunities" guaranteed under the Pennsylvania Constitution. App. 857. The defendants asserted a governmental immunity defense to these claims under the Political Subdivision Tort Claims Act (the"Act"), 42 Pa. Cons. Stat. Ann. SS 8541-8564 (West 1982 & Supp. 1997). According to the district court, the individual defendants were immune under the Act because they did not consider factors outside of their authority. Again, although the district court based its analysis upon an erroneous interpretation of the ordinance, we affirm its conclusion.

The City is immune from Sameric's claims arising under the equal protection and civil rights sections of the Pennsylvania Constitution because the Act grants it immunity from claims for monetary damages except with respect to eight specific types of tortious conduct, none of which is applicable here. See 42 Pa. Cons. Stat. Ann. S 8542(b) (specifying that liability may be imposed upon the local agency for damages resulting from the following acts: the operation of a motor vehicle; the care or custody of personal or real property of others in the possession of the agency; dangerous conditions resulting from trees, traffic controls or street lighting; dangerous conditions resulting from utility service facilities; dangerous condition of streets and sidewalks; and the care or custody of animals in the possession of the agency); Agresta v. Goode, 797 F. Supp. 399, 409 (E.D. Pa. 1992). In fact, Sameric conceded during the district court proceedings that the Act barred the state

constitutional claims asserted against the City. See Sameric Corp. of Del., Inc. v. City of Philadelphia, 1997 WL 399374, at *7.

We also find that the individual defendants are immune under the Act from Sameric's state constitutional claims. Under the Act, individual defendants are immune from liability for acts within the scope of their employment to the same extent as their employing agency, see 42 Pa. Cons. Stat. Ann. S 8545,16 except that they are liable if their conduct amounts to actual fraud, crime, actual malice or willful misconduct. See 42 Pa. Cons. Stat. Ann. S 8550.17 "Willful misconduct," as used in section 8550, requires evidence that the defendants actually knew that their conduct was illegal. See Renk v. City of Pittsburgh, 641 A.2d 289, 293-94 (Pa. 1994); see also In re City of Philadelphia Litig., 938 F. Supp. 1264, 1271 (E.D. Pa. 1996). Because there is insufficient evidence that the individual defendants actually knew that their conduct was illegal and no evidence at all that crime, fraud, or malice is implicated here, the district court properly granted summary judgment in favor of the individual defendants based upon immunity under the Act.

_____

16. Section 8545 states that

        [a]n employee of a local agency is liable for civil damages on account
        of any injury to a person or property caused by acts of the employee
        which are within the scope of his office or duties only to the same
        extent as his employing local agency and subject to the limitations
        imposed by this subchapter.

42 Pa. Cons. Stat. Ann. S 8545.

17. Section 8550 states that the immunity, indemnity, and damage limitations of the Act do not apply

        [i]n any action against a local agency or employee thereof for
        damages on account of an injury caused by the act of the employee
        in which it is judicially determined that the act of the employee
        caused the injury and that such act constituted a crime, actual
        fraud, actual malice or willful misconduct.

42 Pa. Cons. Stat. Ann. S 8550.

IV. CONCLUSION

For the foregoing reasons, we will affirm the district court's grant of summary judgment to the defendants.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit