NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1079
_____

GEORGE CANNAROZZO,
Appellant

v.

BOROUGH OF WEST HAZELTON; DIANE PANZARELLA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-18-cv-00267)
District Judge: Honorable Robert D. Mariani
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 18, 2022

Before: HARDIMAN, PORTER and FISHER, *Circuit Judges*.

(Filed: November 29, 2022)
_____

OPINION*
_____

FISHER, *Circuit Judge*.

George Cannarozzo sued the Borough of West Hazelton and Diane Panzarella, a

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Code Enforcement Officer and Building Code Official for the Borough, under 42 U.S.C. § 1983. He alleged the Defendants violated his Fourth Amendment right when Panzarella conducted a warrantless search of a five-unit apartment building he owned in response to a fire alarm. At summary judgment, the District Court dismissed Cannarozzo's claim, concluding no Fourth Amendment violation occurred. We agree.[1]

A § 1983 claimant must prove (1) "the conduct complained of was committed by a person acting under color of state law" and (2) "the conduct deprived the complainant of rights secured under the Constitution or federal law."[2] A local government may be held liable under § 1983 "when execution of a government's policy or custom . . . inflicts [an] injury [for which] the government as an entity is responsible."[3] Administrative searches conducted by health and safety officials are governed by the "controlling [Fourth Amendment] standard of reasonableness."[4] The parties disagree whether exigent circumstances—an exception to the warrant requirement "that the law has traditionally

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 (federal question). This Court has jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts). We have plenary review over an order granting summary judgment. *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation[s] or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).
[2] *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998).
[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).
[4] *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 539 (1967).

upheld in emergency situations"—justified the warrantless search here.[5]

Cannarozzo contends the record contains factual discrepancies about the actual dangers precipitating the search. But based on the undisputed facts, Panzarella had an "objectively reasonable basis"[6] for believing an imminent emergency existed which created a "compelling urgency to inspect" the basement.[7]

On the day of the search, the Fire Department had been called twice to the property. The first time, they responded to a reported commercial fire alarm. The crew, including Deputy Fire Chief Robert Segaria, investigated the first-floor unit and observed the entire downstairs had a light smoke haze. Within a few minutes, they identified grease in a pan on the stove, cautioned an occupant to be careful when frying and cooking, and cleared the scene.

Twelve minutes later, 911 dispatched the Department, including Segaria and Fire Chief Shawn Evans, to the same property. Around that time, Evans contacted Panzarella. When Panzarella arrived, the Department was at the scene and in control. It had identified heavy smoke coming from the kitchen area and burnt papers with heavy black charring

---

[5] *Id.* Our plenary review includes "whether the historical facts of a warrantless search or seizure meet the legal test of exigency." *United States v. Mallory*, 765 F.3d 373, 382 (3d Cir. 2014).

[6] *Brigham City v. Stuart*, 547 U.S. 398, 406 (2006); *see also Mallory*, 765 F.3d at 383 ("We evaluate whether exigent circumstances existed by an objective standard."); *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996) ("[T]o qualify as exigent, the officers reasonably must believe that someone is in imminent danger." (emphasis omitted)).

[7] *Camara*, 387 U.S. at 539.

outside the back door. Segaria informed Panzarella that the crew observed a sparking cooktop and would check the basement for potential spread of the fire. While in the basement, the crew thought they could also access and secure the circuit breaker that powered the entire building, including the unit with the sparking oven. Cannarozzo kept the basement locked and inaccessible to tenants.

At Evans's instruction, Segaria and the crew entered the basement. Segaria observed hazardous conditions from the faulty wiring. He emerged and told Panzarella to "get down there."[8] Once in the basement, Panzarella observed dangling, spliced, frayed, and corroded wires. She believed the wires posed "an imminent danger to life or property,"[9] so she called Carl Faust, a building inspector contracted by the Borough. The Department remained in control of the scene when Faust arrived. Faust joined Segaria and Panzarella in the basement and observed the hazardous conditions. Given the dangers posed by the faulty wiring, the Department requested utilities be shut off. Just after 1:00 PM, the Department cleared the scene and ceded control to code enforcement officials who eventually condemned the property.

"Fire officials are charged not only with extinguishing fires, but with finding their causes"—particularly when necessary to detect and abate potential "continuing dangers

---

[8] JA 186; *see also* SA 118 ("[H]e basically said, you've got to get down there."), 120 ("You better get in there."). "JA" refers to the Joint Appendix. "SA" refers to the Supplemental Appendix.

[9] SA 129.

such as faulty wiring."[10] Thus, Segaria and Evans engaged in a reasonable search: narrow in scope (aimed at determining whether the fire had spread and accessing the circuit breaker) and relatively brief (less than two hours).[11] However, during their reasonable search of the basement, they discovered a continuing danger separate from an active fire: faulty wiring.[12] Given the circumstances and her knowledge of the sparking oven, a reasonable person in Panzarella's shoes could have believed an emergency was afoot, requiring immediate investigation, when Segaria emerged from the basement.[13] The same is true for Faust, who reasonably searched the basement after Panzarella observed the dangerous conditions and summoned him. Thus, Cannarozzo's argument regarding Panzarella's and Faust's responsibility (or lack thereof) for determining the cause and origin of the fire is inconsequential. That the District Court denied Defendants' motion to dismiss, in part, because Panzarella and Faust did not function as fire marshals does not preclude summary judgment now based upon a more developed record. The evidence shows faulty wiring, not the fire, created the exigent circumstances justifying the inspectors' warrantless search of the basement.

---

[10] *Michigan v. Tyler*, 436 U.S. 499, 510 (1978) (rejecting view that exigencies for warrantless entry to fight fires ends "with the dousing of the last flame").

[11] *See Michigan v. Clifford*, 464 U.S. 287, 297 n.8 (1984) ("[T]he exigency exception may allow warrantless post-fire investigations where necessary to ensure against any immediate danger of future fire hazard.").

[12] *Camara*, 387 U.S. at 539 (permitting warrantless administrative search during "emergency situations").

[13] *Id.* Panzarella had previously condemned a unit on the property, in part, for various unresolved electric-related code violations.

Cannarozzo's efforts to create a genuine issue of fact are unpersuasive. To the extent he disputes any of the above, he either fails to provide a "sufficient evidentiary basis" for any alleged factual gaps or fails to meaningfully challenge facts that "might affect the outcome of the suit under governing law."[14] To start, his conclusory denial of Panzarella's deposition testimony about the dangerous wiring, without more, is insufficient to raise a genuine issue of material fact.[15] He is also incorrect that Segaria's testimony regarding the basement conditions is self-contradictory. Segaria saw the blatant building code violations and highlighted them to Panzarella and Faust, but did not engage in a formal assessment of the property. Finally, we reject Cannarozzo's argument that Segaria's testimony "was an *ex-post-facto* analysis of un-authenticated pictures."[16] Both Segaria's testimony and the photos would be admissible at trial.[17]

In sum, the basement search did not violate the Fourth Amendment. Absent a violation, this Court need not analyze the Borough's liability under *Monell* nor Panzarella's qualified immunity defense.

For these reasons, we will affirm.

---

[14] *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

[15] *See Anderson*, 477 U.S. at 256–57; *cf. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

[16] Blue Br. 18.

[17] *See* Fed. R. Evid. 602, 901(b)(1).