### Rolf LARSEN, Plaintiff

v.

### STATE EMPLOYEES' RETIREMENT SYSTEM ("SERS"), et al., Defendants.

#### No. 4:07–cv–1838.

United States District Court, M.D. Pennsylvania.

May 15, 2008.

Lawrence H. Fisher, Cohen & Willwerth PC, Pittsburgh, PA, for Plaintiff.

Susan J. Forney, Office of Attorney General, Harrisburg, PA, A. Taylor Williams, Administrative Office of PA Courts, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOHN E. JONES III, District Judge.

This matter is before the Court on the motions to dismiss of the State Employees' Retirement System ("SERS"), the State Employees' Retirement Board ("SERB") and related individual defendants (collectively "the SERS defendants") (Doc. 10) and the Administrative Office of Pennsylvania Courts ("AOPC") and David Frankforter (collectively "the AOPC defendants") (Doc. 11). For the reasons set forth below, the motion of the SERS defendants will be granted in part and denied in part. The motion of the AOPC defendants will be granted, and the claims against these defendants dismissed in their entirety.

## I. STANDARDS OF REVIEW

### A. Rule 12(b)(1)

The defendants' motions argue, in part, that they are immune from the plaintiff's claims under the Eleventh Amendment, and therefore, that the Court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n. 2 (3d Cir.1996). When considering a motion to dismiss under Rule 12(b)(1), a court must distinguish between facial and factual challenges to its subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). A facial attack challenges whether the plaintiff has properly pled jurisdiction. *Id.* "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891). A factual attack, in contrast, challenges

jurisdiction based on facts apart from the pleadings. *Mortensen,* 549 F.2d at 891. "When a defendant attacks subject matter jurisdiction 'in fact,' . . . the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. In such a situation, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n,* 227 F.3d 62, 69 (3d Cir.2000) (quoting *Mortensen,* 549 F.2d at 891). In this case, the defendants do not rely on any facts beyond the pleadings in support of their jurisdictional argument, and their Eleventh Amendment defenses raise a facial challenge to jurisdiction. *See Smolow v. Hafer,* 353 F.Supp.2d 561, 566 (E.D.Pa.2005); *Bell Atl.-Pa., Inc. v. Pa. Public Utility Comm'n,* 107 F.Supp.2d 653, 659 (E.D.Pa.2000).

### B. Rule 12(b)(6)

The defendants' motions also challenge the legal sufficiency of the plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

*Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief", and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips,* 515 F.3d at 232 (citing *Twombly,* 127 S.Ct. at 1965 n. 3). "[A] complaint must allege facts suggestive of [the proscribed] conduct", and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965, 1969 n. 8. Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips,* 515 F.3d at 234 (quoting *Twombly,* 127 S.Ct. at 1965 n. 3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231 (citing *Twombly,* 127 S.Ct. at 1964–65, 1969 n. 8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## II. BACKGROUND

With these standards of review in mind, the following are the facts derived from the complaint for the purposes of the current motions, accepting as true all factual

allegations and construing the complaint in the light most favorable to the plaintiff. *Phillips*, 515 F.3d at 231; *Gould Elecs.*, 220 F.3d at 176.

This action concerns the calculation and administration of Plaintiff Rolf Larsen's retirement benefits. Larsen is a former justice of the Pennsylvania Supreme Court. (Complaint, Doc. 1, ¶ 25.) He won election to the Allegheny County Court of Common Pleas in 1973 and then to the Pennsylvania Supreme Court in 1977. (*Id.* at ¶¶ 24–25.) From January 1, 1978 through September 1993, in addition to his base salary, Larsen received additional compensation in the form of a monthly unvouchered expense account. (*Id.* at ¶ 27.) Further, while Larsen served in these positions, his benefits plan provided for lifetime retirement benefits for retired judges with ten or more years of judicial service. (*Id.* at ¶ 28.)

Larsen was "terminated" from his position as a Supreme Court justice at various times, by various entities: on June 3, 1994 by Deputy Court Administrator David Frankforter; on June 13, 1994 by the Allegheny County Court of Common Pleas; on October 4, 1994 by the Pennsylvania Senate; and on February 4, 2000 by the Pennsylvania Court of Judicial Discipline. (*Id.* at ¶ 26.)

Larsen appealed all of his terminations (*id.* at ¶ 33), which were upheld (*see id.* at ¶¶ 34–42). After the Third Circuit's October 29, 2001 decision rejecting one of his challenges to his termination, Larsen applied to SERS for his retirement benefits on November 19, 2001. (*Id.* at ¶¶ 42–43, 46.) Larsen began collecting his pension in February 2002. (*Id.* at ¶ 46.)

On February 1, 2002, Linda Miller, director of the benefits determination divi-

sion of SERS, issued a letter to Larsen, determining that the effective date of his retirement was November 19, 2001, the date of his benefits application, and that unvouchered expense payments were not included in the calculation of his final average salary. (*Id.* at ¶ 47.) On February 28, 2002, Larsen appealed these determinations, arguing that his retirement date should be June 3, 1994, the date of his first "termination", and further arguing that the calculation of his final average salary should include unvouchered expenses. (*Id.* at ¶ 48.) On June 17, 2002, SERS Executive Director John Brosius notified Larsen that the Appeals Committee had denied his appeal. (*Id.* at ¶ 49.) On July 17, 2002, Larsen filed another appeal to SERB. (*Id.* at ¶ 51.) In response, SERS filed an answer, new matter, and counterclaim on August 6, 2002. (*Id.* at ¶ 52.)

Larsen states that SERS' August 6, 2002 response to his appeal was the first time he became aware of Management Directive 570.8, a "secret" management directive enacted by SERS on October 10, 1989.[1] (*Id.* at ¶¶ 29, 52; *see also id.* at Ex. A.) This directive "provides guidelines for employes who have been dismissed or furloughed and subsequently reinstated as a result of arbitration awards, civil service adjudications, court orders, or grievance settlements." (*Id.*, Ex. A at 1.) After setting out specific procedures, the directive concludes:

> The information detailed above is to be provided by agency retirement counselors to any dismissed or furloughed employe. Employes are to be informed of their rights and obligations regarding actions they may take which affect their retirement accounts. For example, an employe may file a conditional retire-

---

1. The Management Directive 570.8 submitted as Exhibit A to the Complaint is dated August 10, 1989.

ment application if he or she wishes to appeal a dismissal or furlough. If the employe wins his or her appeal and is reinstated, the conditional application becomes void. No payments would be made, and no repayments would be necessary. If the employe loses the appeal, the application for retirement becomes effective the day specified on the application.

(*Id.*, Ex. A. at 2.)

Larsen states that at no time after his first termination on June 3, 1994 did any of the defendants inform him of the possibility of filing a conditional application for retirement benefits. (*Id.* at ¶ 32.) Larsen alleges that Frankforter was AOPC's retirement counselor, under 71 Pa.C.S.A. § 5906(f), and therefore was under a duty to so inform him. (*Id.* at ¶ 31.) Larsen further alleges that the defendants' failure to inform him of the right to file a conditional application left him in the "Catch–22" of being unable to file an application for benefits without losing standing to challenge his terminations in court, and that, had he known of the option, he would have filed a conditional application as of June 3, 1994. (*Id.* at ¶¶ 33, 60.)

On September 25, 2002, Larsen filed a reply in support of his administrative appeal. (*Id.* at ¶ 56.) As of the filing of the complaint in this action, Larsen's appeal remains pending.[2] (*Id.* at ¶ 63.)

Based on these allegations, Larsen asserts numerous causes of action against twenty defendants. Named as defendants are (i) SERS; (ii) SERB; (iii) various SERS directors, board members, and employees [3] (collectively the "SERS individual defendants"); (iv) AOPC; and (v) former AOPC Director of Human Resources David Frankforter. (*Id.* at ¶¶ 4–23.)

Larsen first asserts that the defendants violated Article I, Section 10, Clause 1 of the United States Constitution by impairing his contractual right to his retirement benefits. (*Id.* at Count I.) Next, Larsen asserts that the defendants violated his substantive and procedural due process by failing to provide information about a conditional appeal, failing to act on his administrative appeal for five years, and withholding his benefits. (*Id.* at Count II.) Next, Larsen alleges that the defendants have denied him equal protection by failing to include unvouchered expenses in his final average salary, while doing so for other state employees. (*Id.* at Count III.) Larsen also asserts state-law causes of action against all defendants for fraud, breach of contract/promissory estoppel, and negligence. (*Id.* at Counts IV, VI, VII.) Larsen also asserts that SERS has been unjustly enriched by retaining the benefits to which he is entitled. (*Id.* at Count V.) Finally, Larsen asserts a mandamus cause of action against all defendants, seeking an order directing the defendants to provide him with the benefits to which he argues he is entitled. (*Id.* at Count VIII.) In addition to a writ of man-

---

2. In his briefs opposing the defendants' motions, Larsen indicates that, soon after receiving the October 9, 2007 complaint in this action, SERS/SERB notified his counsel that they intended to hold a hearing on his administrative appeal and notified AOPC of its right to intervene in the appeal. Larsen states that he has agreed not seek to enjoin that hearing in this action and, in exchange, SERS/SERB will hold the appeal in abeyance pending the resolution of the current motions to dismiss. (Doc. 16 at 3; Doc. 17 at 2.)

3. The SERS individual defendants are: former Executive Director John Brosius; Acting Executive Director John Winchester; board members Nicholas Maiale, Michael Acker, Gibson Armstrong, Robert Bittenbinder, David Fillman, Lynne Fox, Michael Gerber, Robert Godshall, Raphael Musto, Joseph Rocks, and Robin Wiessman; Deputy Chief Counsel Nicholas Joseph Martucci; Appeals Committee member Gayle Martin, and Director of Benefits Determination Division Linda Miller.

damus, Larsen seeks as relief a declaratory judgment and injunction directing the defendants to calculate his pension to include past due monies from June 3, 1994 to the present and unvouchered expenses. Larsen also seeks punitive damages against all defendants.

## III. DISCUSSION

The SERS defendants assert that Larsen's claims are barred by (i) Eleventh Amendment immunity; (ii) the statute of limitations; and (iii) state-law sovereign immunity. The AOPC defendants similarly assert that Larsen's claims are barred by Eleventh Amendment immunity and the statute of limitations, and also assert that Larsen has no mandamus claim against them because they have no authority to calculate or administer his benefits. Finally, Frankforter argues that he is entitled to qualified immunity, or alternatively, a more definite statement to determine whether qualified immunity applies. Each argument will be addressed in turn.

### A. Eleventh Amendment Immunity

■ The Eleventh Amendment "has been interpreted to make states generally immune from suit by private parties in

federal court." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 502 (3d Cir. 2001) (citations omitted). "This immunity extends to state agencies and departments." *Id.* (citing *C.H., ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir.2000) (en banc)). Eleventh Amendment immunity also extends to state officials sued in their official capacity because in such a case the state is the real party in interest. *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir.1990) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Suits against state officials in their personal or individual capacity, however, are not barred by the Eleventh Amendment. *Id.*

The initial application of these principles to the current case is relatively straightforward. Larsen's claims against SERS, SERB, and AOPC are barred by the Eleventh Amendment because these entities are state agencies.[4] Similarly, Larsen's claims against the individual SERS defendants and Frankforter in their official capacities are also barred by the Eleventh Amendment as these defendants are state officials. Larsen's claims against these defendants in their individual capacities are not so barred.[5]

4. In a footnote, Larsen makes a passing attempt at arguing that SERS and SERB are not "arms of the state" for purposes of Eleventh Amendment immunity on the grounds that the retirement benefits at issue are in the nature of deferred compensation for past services rendered rather than state funds and because the state itself would not actually pay his benefits. (*See* Doc. 17 at 3 n. 2.) This argument is unpersuasive. As an initial matter, Pennsylvania statute makes the financial obligations of SERS obligations of the Commonwealth. 71 Pa.C.S.A. § 5951. Thus, regardless of whether the state would actually pay Larsen's benefits, it has the ultimate obligation to do so. Moreover, the question of whether payment of the judgment would come from the state is only one of three equally important factors in determining whether an entity is an arm of the state.

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir.2007). The other two factors—what status the entity has under state law and what degree of autonomy the entity has—weigh heavily in favor of finding that SERS and SERB are state entities (*see* Doc. 14 at 3–4), and courts have found Eleventh Amendment immunity applicable to entities based on these two factors even where the first factor is in doubt. *See, e.g., id.* at 546–49; *see also Watrel v. Commonwealth Dep't of Educ.*, 88 Pa.Cmwlth. 1, 488 A.2d 378, 380 (1985) (stating "SERB is ... part of the Commonwealth for purposes of sovereign immunity and eleventh amendment protection.").

5. The AOPC and Frankforter also correctly assert that they are not "persons" for purposes of 42 U.S.C. § 1983, and therefore, cannot be sued by Larsen under that statute.

■ "Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir.2002). Larsen argues that Eleventh Amendment immunity is inapplicable here based on the third exception, the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

■ Under this doctrine, a suit against a state officer seeking prospective relief designed to end a continuing violation of federal law is not barred by the Eleventh Amendment under the theory that the action is not against the state because the alleged violation of federal law strips the officer of his official authority. *Hess*, 297 F.3d at 323 (citing *Young*, 209 U.S. at 159–60, 28 S.Ct. 441; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Thus, for the doctrine to apply, the plaintiff must allege an ongoing violation of federal law. *Id.* at 323–24. In addition, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages." *Id.* at 323 (citing *Pennhurst*, 465 U.S. at 102–03, 104 S.Ct. 900). In determining whether the request relief falls within the *Ex parte Young* exception, a court must "look to the substance rather than the form of the relief sought." *Papasan v. Allain*, 478 U.S. 265, 278, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). The doctrine applies only against state officials sued in their official capacities, not against states

or state agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir.2002). Further, "*Young* does not apply if, although the action is nominally against individual officers, the state is the real, substantial party in interest and the suit in fact is against the state." *Hess*, 297 F.3d at 324 (citing *Pennhurst*, 465 U.S. at 101, 104 S.Ct. 900).

"In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar, the Supreme Court has made it quite clear that 'a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."'" *Id.* (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)). The Supreme Court has also recognized, however, that "[f]or Eleventh Amendment purposes, the line between permitted and prohibited suits will often be indistinct." *Papasan*, 478 U.S. at 278, 106 S.Ct. 2932.

■ In this case, as an initial matter, Larsen's claims against SERS, SERB, and AOPC are unaffected by the *Ex parte Young* doctrine because these entities are state agencies. Larsen's claims against these entities are barred by the Eleventh Amendment. *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146, 113 S.Ct. 684; *Koslow*, 302 F.3d at 178.

■ Next, Larsen seeks as relief from the individual defendants, *inter alia*, punitive damages. Such damages are not prospective or injunctive. Therefore, Lar-

The analysis of this argument overlaps to a large extent with their Eleventh Amendment argument, *see Callahan v. City of Philadelphia*, 207 F.3d 668, 669–70 (3d Cir.2000), and the conclusion is the same: Larsen's claims against the AOPC and Frankforter in his official capacity are barred.

sen's claims for punitive damages against the individual SERS defendants and Frankforter in their official capacities are barred by the Eleventh Amendment.

Larsen also seeks a declaratory judgment, an injunction, and a writ of mandamus directing the individual defendants (i) to pay to him, as part of his pension, benefits for the period from his first termination on June 3, 1994 to his formal benefits application on November 19, 2001; (ii) to include unvouchered expenses in his final average salary for purposes of determining his pension benefits, both for the period from June 3, 1994 to November 19, 2001 and in the future; and (iii) to pay him all cost-of-living adjustments and statutory interest on the "past due monies" for the period from June 3, 1994 to November 19, 2001.

The relief Larsen requests lies somewhere in the twilight zone of Eleventh Amendment jurisprudence. *Compare Edelman v. Jordan*, 415 U.S. 651, 667, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ("[T]he difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night.") *with The Twilight Zone* (CBS television broadcast, Season 1, 1959–60) ("It is the middle ground between light and shadow."). On one hand, Larsen seeks an order directing these defendants to calculate his future pension payments in a certain manner. On the other hand, Larsen seeks the payment of benefits that he claims accrued but were wrongfully withheld from 1994 to 2001, plus interest on what he calls these "past due monies." Guidance regarding the application of *Ex parte Young* to such circumstances can be found in the Supreme Court's decisions in *Edelman* and *Papasan*, both of which dictate that Larsen's claims are barred by the Eleventh Amendment.

In *Edelman*, the plaintiff brought a class action for injunctive and declaratory relief against Illinois officials administering the federal-state benefit program of Aid to the Aged, Blind, and Disabled. Federal regulations required eligibility determinations to be made by states within 30 days of receipt of applications for benefits to the aged and blind and within 45 days of receipt of applications for benefits to the disabled. The complaint charged that Illinois officials were not processing applications within these requirements and were authorizing benefits to commence only with the month an application was approved and not including prior months of eligibility during which an applicant was entitled to benefits. The district court granted a permanent injunction requiring compliance with the federal time limits and ordering the officials to pay the benefits wrongfully withheld. The court of appeals affirmed.

The Supreme Court, however, reversed that portion of the court of appeals decision affirming the district court's order requiring the payment of benefits. *Edelman*, 415 U.S. at 658–59, 94 S.Ct. 1347. The Court held that *Ex parte Young* "does not extend so far as to permit a suit which seeks the award of an accrued monetary liability which must be met from the general revenues of a State." *Id.* at 664, 94 S.Ct. 1347. The Court held that the district court's order requiring the payment of money which should have been paid, but was not, "is in practical effect indistinguishable in many aspects from an award of damages against the State. It will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action. It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Id.* at 664, 668, 94 S.Ct. 1347. The fact that the relief requested

was an injunction rather than damages was irrelevant because the Court did "not read *Ex parte Young* ... to indicate that any form of relief may be awarded against a state officer, no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled 'equitable' in nature." *Id.* at 666, 94 S.Ct. 1347.

In *Papasan,* school children and local school officials brought suit against Mississippi officials claiming that the sale of federal school land grants had violated the state's purported trust obligation to hold the land for the benefit of school children in perpetuity. The plaintiffs' sought a declaration that the sale of the land was void and an order requiring the establishment of a fund to be held in trust for their benefit. The plaintiffs argued that this relief was permissible under *Ex parte Young* because they only sought to enforce the officials' continuing obligation to make appropriate payments for the benefit of the school children. The district court dismissed the plaintiffs' trust claim, which the Supreme Court found was identical to their impairment of contractual obligations claim, as barred by the Eleventh Amendment. *Papasan,* 478 U.S. at 274 n. 8, 106 S.Ct. 2932. The court of appeals affirmed and the Supreme Court upheld this part of the district court's decision.

In describing the types of relief allowed by *Ex parte Young,* the Supreme Court stated:

> Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant. This is true if the relief is expressly denominated as damages. It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else.

*Id.* at 278, 106 S.Ct. 2932 (citations omitted). The Court held that the plaintiffs' "distinction between a continuing obligation on the part of the trustee and an ongoing liability for past breach of trust is essentially a formal distinction of the sort we rejected in Edelman." *Id.* at 280, 106 S.Ct. 2932. The Court reasoned that the plaintiffs' requested relief for the officials' breach of their continuing obligation to comply with the trust payment obligations was "in substance the award, as continuing income rather than as a lump sum, of an accrued monetary liability." *Id.* at 280–81, 106 S.Ct. 2932 (citations, emphasis omitted).

■ Like the plaintiffs in *Edelman* and *Papasan,* Larsen seeks relief which, although labeled injunctive and prospective, is more akin to damages for past wrongs. Larsen's relief would be paid, not from the pockets of the individual defendants, but by the state agency defendants. *Edelman,* 415 U.S. at 668, 94 S.Ct. 1347. The requested relief—wrongfully withheld past pension payments—is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the individual defendants. *Id.* Larsen asks that the Court order the defendants to calculate future pension payments to include these past due amounts, but this is merely a request for damages "as continuing income rather than as a lump sum." *Papasan,* 478 U.S. at 280–81, 106 S.Ct. 2932. Larsen's suit, which seeks the award of an accrued monetary liability as compensation for the past actions of state officials, is practically indistinguishable from a suit seeking compensatory damages from those officials, and therefore, Larsen's claims against the individual defendants in their official capacities are barred by the Eleventh Amendment.

■ In addition, Larsen's claims against Frankforter in his official capacity also do not fall within the *Ex parte Young* excep-

tion because Frankforter has no authority to provide the purportedly prospective relief Larsen seeks. Frankforter, as an employee of the AOPC, has no power to require SERS to pay Larsen a certain amount of pension benefits. Larsen's claims against Frankforter arise solely from Frankforter's alleged failure to provide him with Management Directive 570.8 after his termination on June 3, 1994. To the extent that this allegation states any claim, the only possible prospective relief would be an order directing Frankforter to provide Larsen with Management Directive 570.8, and Larsen has already been afforded this relief. Larsen argues that the AOPC (and thus presumably Frankforter) should have intervened in his administrative appeal, but concedes that "under the Pennsylvania Administrative Code, the SERS/SERB Defendants possess the sole discretion to decide whether to hold an administrative hearing in aid of adjudicating administrative appeals." (Doc. 12 at 2 n. 1.) No order governing Frankforter's future conduct could provide any of the relief which Larsen seeks, even assuming that such relief could be characterized as prospective and injunctive for purposes of *Ex parte Young*. Therefore, Larsen's claims against Frankforter do not fall within this exception to Eleventh Amendment immunity.[6]

▮ Finally, the Eleventh Amendment also bars Larsen's state law claims against the agency defendants and the individual defendants in their official capacities. The Eleventh Amendment strictly bars suits in federal court against state agencies or state officials for violations of state law, and the *Ex parte Young* doctrine is inapplicable to such claims. *Pennhurst*, 465 U.S. at 105–06, 104 S.Ct. 900; *Hess*, 297 F.3d at 325.

In summary, all of Larsen's claims against SERS, SERB, and AOPC are barred by the Eleventh Amendment. All of Larsen's claims against the individual SERS defendants and Frankforter in their official capacities are also barred by the Eleventh Amendment and do not fall within the *Ex parte Young* to immunity. Larsen's claims against the individual SERS defendants and Frankforter in their individual capacities are not so barred.

**B. Statute of Limitations**

All defendants also argue that Larsen's claims are barred by the statute of limitations. Larsen argues that his claims are saved by the continuing violations doctrine or equitable tolling. The Court finds that Larsen's claims are time-barred, but that his claims against the SERS defendants are saved by the continuing violations doctrine.

▮ "Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued." *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir.2006).[7] The applicable Penn-

6. The same conclusion adheres to Frankforter's alternative argument that he is not a "person" under § 1983. While a state official sued in his official capacity for prospective injunctive relief is a "person" for purposes of § 1983, *Melo*, 912 F.2d at 635 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)), here Larsen alleges no grounds for prospective injunctive relief against Frankforter.

7. Larsen faults the defendants for relying on § 1983's statute of limitations while "ignor-

ing" the fact that he has asserted jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. However, actions for declaratory relief do not have their own statute of limitations, but are governed by the period of limitations applicable to the substantive claims underlying the declaratory judgment claim. *See Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 181 (3d Cir. 1997). Thus, to the extent that Larsen's § 1983 claims are barred by the statute of limitations, so too would his claims for de-

sylvania statute of limitations for personal injury actions is two years. 42 Pa. Cons. Stat. Ann. § 5524; *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir.2003). Although the applicable statute of limitations is borrowed from state law, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, —— U.S. ——, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007). Rather, accrual of a § 1983 cause of action is "governed by federal rules conforming in general to common-law tort principles. Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 127 S.Ct. at 1095 (citations omitted). Generally, therefore, "[a] section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. of Del. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998).

■ The statute of limitations for Larsen's state-law fraud and negligence claims is two years, 42 Pa.C.S.A. § 5524, and four years for his breach of contract/ promissory estoppel and unjust enrichment claims, 42 Pa.C.S.A. § 5525. Under Pennsylvania law, the limitations period is computed from the time an action accrues. 42 Pa. C.S.A. § 5502(a). A cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion, and therefore the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 857 (2005). Generally, this right arises when the plaintiff's injury is inflicted. *Id.*

The complaint in this action was filed on October 9, 2007. Therefore, Larsen's § 1983, fraud, and negligence claims are untimely if they accrued before October 2005 and his breach of contract/promissory estoppel and unjust enrichment claims are untimely if they accrued before October 2003.

It is clear from the face of the complaint that Larsen's claims accrued in 2002, and therefore are untimely.[8] As of the February 1, 2002 letter from SERS, Larsen was aware that his benefits would not include payments for the period from June 3, 1994 to November 19, 2001 and would not include unvouchered expenses. As of the filing of SERS' response to his administrative appeal on August 6, 2002, Larsen was aware of Management Directive 570.8 and the defendants' alleged obligation to inform him of the ability to file a conditional retirement application. Because Larsen was aware of his alleged injuries and the potential claims arising therefrom by at least August 2002, his claims are barred by the statute of limitations.

■ Larsen argues, however, that his claims are saved from the statute of limitations by the continuing violations doctrine. This doctrine is an "equitable exception to the timely filing requirement." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995)). Under this doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise

---

claratory relief to correct the alleged constitutional violations be barred.

**8.** The affirmative defense of the statute of limitations may be considered on the present

Rule 12(b)(6) motions because the untimeliness of the claims is apparent from the face of the complaint. *See Robinson v. Johnson*, 313 F.3d 128, 135 & n. 3 (3d Cir.2002).

be time barred." *Id.* (quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991)). The doctrine is a narrow exception to the statute of limitations that is frequently invoked but rarely found. *See Voices for Independence (VFI) v. Pa. Dep't of Transp.*, C.A. No. 06–78, 2007 WL 2905887 (W.D.Pa. Sept. 28, 2007).

 "To establish that a claim falls within the continuing violations theory, the plaintiff must do two things. First, he must demonstrate that at least one act occurred within the filing period: The crucial question is whether any present violation exists. Next, the plaintiff must establish that the [alleged wrong] is more than the occurrence of isolated or sporadic acts." *West,* 45 F.3d at 755. In examining this second step, "courts should consider at least three factors: (1) subject matter—whether the violations constitute the same type ..., tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights." *Cowell,* 263 F.3d at 292 (citing *West,* 45 F.3d at 755 n. 9). The third factor, permanence, is the most important. *Id.* In considering this third factor, the court "must consider the policy rationale behind the statute of limitations. That is, the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." *Id.* at 295. The burden is on the plaintiff to demonstrate that the continuing violations doctrine applies to toll the statute of limitations. *Id.* at 292.

 The Court finds that Larsen's claims against the SERS defendants fit within the continuing violations doctrine and therefore are not barred by the statute of limitations. Larsen identifies as the SERS defendants' continuing violation the ongoing five-year delay in ruling on the appeal of his benefits determination. The course of conduct alleged by Larsen, from the alleged miscalculation of his benefits to the current "stonewalling" of his attempts to correct the miscalculation, is sufficiently continuing and connected to invoke the equitable relief of the continuing violations theory. With regard to the first factor, subject matter, Larsen's due process claim based on the delay in his administrative appeal is bound up with his claims that the SERS defendants have deprived him of his pension without requisite process and is directly connected to the alleged initial wrongs of these defendants. The second factor, frequency, also supports tolling the statute of limitations. Larsen alleges that, from 2002 to the present, he attempted to move his appeal forward, but that the SERS defendants blocked his efforts. Finally, the third and most important factor, permanence, also weighs in Larsen's favor. Although Larsen was aware of the alleged miscalculation of his benefits in 2002, he immediately appealed the decision. Larsen reasonably could have anticipated that his claims would be addressed through the administrative process, giving his initial benefits determination less "permanence" for purposes of this analysis. Larsen did not sit on his rights, but diligently pursued his claims as far as SERS would allow him.

In addition to these factors, the equitable nature of the continuing violations doctrine weighs in favor of its application here. There is a certain inconsistency in the SERS defendants raising a statute of limitations defense when their alleged misconduct is a substantial reason for Larsen's delay in bringing his claims, and this equitable consideration supports the exercise of the Court's discretion in applying the continuing violation doctrine to Larsen's claims against these defendants.

Application of the continuing violations doctrine to Larsen's claims against the SERS defendants is further buttressed by a recent decision of this Court addressing analogous circumstances. In *Schimes v. Barrett,* C.A. No. 3:07–cv–872, 2008 WL 857534 (M.D.Pa. Mar.27, 2008), the plaintiff, an employee of the City of Scranton, alleged that in January 2003 he was improperly denied his pension benefits. The plaintiff appealed the denial of his pension to the city pension board and through the state courts, and was opposed at each step by the defendants. Eventually, in December 2006, the state courts ruled that the plaintiff was entitled to his pension. In May 2007, the plaintiff filed suit in federal court, alleging that the city and various city officials violated his due process and equal protection rights by denying his pension intentionally and without a fair hearing. The defendants moved to dismiss the claims as time-barred, but the court held that the continuing violations doctrine entitled the plaintiff to relief from the statute of limitations, stating:

> All of the misconduct [the plaintiff] alleges is related to a single subject matter, the denial of his pension by various Scranton officials. That misconduct did not represent a series of isolated incidents, but as alleged by the plaintiff constituted a continuous attempt over several years to prevent him from exercising his alleged property right in his pension. Though, as we have laid out and as plaintiff admits, the acts of the defendants certainly made him aware of the basis of his claim more than two years before he filed it, plaintiff also points to additional alleged violations by defendants during the litigation over his claims that represented the continuing attempts of the City and the Pension Board to achieve their goal of preventing him from recovering the funds due him.

*Id.* at *6. The facts of this case are quite analogous to those presented in *Schimes,* and for the reasons set forth above, the Court finds that the same result is warranted here.[9]

The SERS defendants, relying on *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989) and *United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1997), argue that Larsen's claims relate only to the present effects of time-barred claims and not a continuing violation. What distinguishes this case from those relied on by the defendants, however, is Larsen's allegation of an ongoing and present due

**9.** The seeming inconsistency of holding that Larsen is not seeking to remedy an ongoing violation for purposes of the *Ex parte Young* doctrine, *see supra* at 412–15, while also holding that Larsen's claims fall within the continuing violations doctrine is explained by the different focus of these two inquiries. The *Ex parte Young* doctrine focuses on whether the relief sought is directed at an official's *future* conduct. Larsen seeks relief that is tantamount to compensation for past injuries. He does not seek to alter the defendants future conduct by, for example, seeking an order directing the SERS defendants to move forward with his appeal. In fact, Larsen suggests that if SERS had not agreed to hold his administrative appeal in abeyance pending the current motions, he would have moved to enjoin the agency from acting on the appeal. (Doc. 16 at 3; Doc. 17 at 2.) The continuing violations doctrine, by contrast, focuses on whether the alleged ongoing violation and a defendant's *past* conduct are sufficiently connected, rather than isolated incidents. In this case, the SERS defendants' alleged due process violation, evidenced by their continuing failure to act on Larsen's appeal, is part of a continuing course of conduct directly related to the initial purported miscalculation of his benefits, and therefore falls within the continuing violations doctrine. Further, the continuing violations doctrine takes into account equitable considerations, applicable in this case, that the *Ex parte Young* doctrine does not.

process violation by the SERS defendants. In *Lorance* and *Evans,* the plaintiffs challenged only past conduct which had present effects. *See Lorance,* 490 U.S. at 903, 109 S.Ct. 2261 (plaintiffs challenged "seniority system not alleged to be discriminatory on its face or as presently applied"); *Evans,* 431 U.S. at 557, 97 S.Ct. 1885 (summarizing plaintiff's argument as "the seniority system gives present effect to the past illegal act"). By contrast, in this case, Larsen challenges the SERS defendants' *present* attempts, which have been ongoing since 2002, to deny him constitutionally required process with regard to the determination of his pension benefits.[10]

■■■ This important distinction, however, requires rejection of the continuing violations doctrine in regard to Larsen's claims against the AOPC and Frankforter. Unlike the allegations of an ongoing due process violation by the SERS defendants, supported by the five-year delay in his administrative appeal, Larsen has not shown any grounds to support a present and continuing violation by the AOPC defendants. Larsen's only claims against the AOPC and Frankforter arise from Frankforter's alleged failure to inform him of Management Directive 570.8 upon his first termination in 1994, which he concedes he became aware of in August 2002. Larsen does not allege any actions by the AOPC or Frankforter since that time or, in fact, since the isolated omission in 1994, which justify application of the continuing violations doctrine. Larsen baldly asserts that the AOPC defendants have displayed an "animus" toward him from the time he was removed from office, but states no facts to support this conclusory allegation. Larsen also attempts to hold the AOPC defendants responsible for the delay in his administrative appeal, arguing that they have "neglected their duties" to intervene in the appeal. But Larsen never identifies the source of this "duty" to intervene, and as noted above, elsewhere argues that SERS has the exclusive authority to act on his appeal.[11] Larsen has not met his burden of demonstrating a continuing violation on the part of the AOPC defendants, and therefore, his claims against these defendants are barred by the statute of limitations.[12]

10. This case is further distinguished from those relied on by the SERS defendants because their misconduct is alleged to have deterred Larsen from timely bringing suit. *Cf. Evans,* 431 U.S. at 558 n. 10, 97 S.Ct. 1885 ("This case does not involve any claim by respondent that United's seniority system deterred her from asserting any right granted by Title VII.").

11. Larsen points to 71 Pa.C.S.A. §§ 5507(a) and 5508 in arguing that the AOPC defendants "had, and have, statutory obligations . . . with respect to his pension retirement *benefits.*" (Doc. 16 at 14 n. 9 [emphasis added].) But these provisions do not support his argument that the AOPC defendants have any obligation to intervene in his *appeal.* In fact, these statutes make clear that the AOPC's contributions to Larsen's retirement benefits are set exclusively by SERB. *See* 71 Pa.C.S.A. § 5507(a) (employers "shall make contributions to the fund on behalf of all active members in such amounts as shall be certified by *the board* . . ."); 71 Pa.C.S.A. § 5508(a) ("The amount of . . . employer contributions on behalf of all active members shall be computed by *the actuary* . . ."); 71 Pa.C.S.A. § 5102 (defining the "board" as the State Employees' Retirement Board and the "actuary" as "[t]he consultant to the board . . .").

12. Larsen does not argue that equitable tolling applies to his claims against the AOPC defendants, but only his claims against the SERS defendants. (*Compare* Doc. 16 at 12–14 *with* Doc. 17 at 11–12.) In any event, the Court would not find that Larsen's claims against the AOPC defendants presents the rare circumstances warranting application of equitable tolling. *See Hedges v. United States,* 404 F.3d 744, 751 (3d Cir.2005) ("Equitable tolling is an extraordinary remedy which should be extended only sparingly.").

## C. State–Law Sovereign Immunity

The SERS defendants further argue that Larsen's claims under Pennsylvania law are barred by state-law sovereign immunity. The Court finds that all of Larsen's state-law claims against the SERS defendants, with the exception of his mandamus claim, are barred by sovereign immunity.

▮▮▮▮ The Pennsylvania General Assembly has reaffirmed by statute the sovereign immunity of the Commonwealth and its agencies and employees. *See Shoop v. Dauphin County,* 766 F.Supp. 1327, 1333–34 (M.D.Pa.1991). That statute provides that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S.A. § 2310. This immunity applies to Commonwealth agencies such as SERS and SERB. *Watrel v. Commonwealth Dep't of Educ.,* 88 Pa.Cmwlth. 1, 488 A.2d 378, 380 (1985); *United Brokers Mortgage Co. v. Fid. Philadelphia Trust Co.,* 26 Pa. Cmwlth. 260, 363 A.2d 817, 819–21 (1976).[13] Sovereign immunity also applies to Commonwealth employees in both their official and individual capacities, so long as the employees are "acting with the scope of their duties." *Maute v. Frank,* 441 Pa.Super. 401, 657 A.2d 985, 986 (1995); *Maples v. Boyd,* C.A. No. 03–6325, 2004 WL 1792775, at *9 (E.D.Pa. Aug.9, 2004). "Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another; it is not unexpected by the employer." *Velykis v. Shannon,* C.A. No. 1:06–cv–0124, 2006 WL 3098025, at *3–4 (M.D.Pa. Oct.30, 2006) (citing *Fitzgerald v. McCutcheon,* 270 Pa.Super. 102, 410 A.2d 1270 (1979) and *Natt v. Labar,* 117 Pa. Cmwlth. 207, 543 A.2d 223, 225 (1988)). Here, it is clear from the face of the complaint that the SERS defendants' actions—calculating and administering Larsen's retirement benefits—clearly fall within the scope their duties. Larsen's state-law claims against the SERS defendants are therefore barred by sovereign immunity unless they fall within one of the exceptions carved out by the Pennsylvania General Assembly.

The General Assembly has not waived immunity for intentional torts or claims under the Pennsylvania constitution. *See La Frankie v. Miklich,* 152 Pa.Cmwlth. 163, 618 A.2d 1145, 1149 (1992); *Faust v. Commonwealth of Pennsylvania Dep't of Revenue,* 140 Pa.Cmwlth. 389, 592 A.2d 835, 839–40 (1991). Therefore, Larsen's claims against the defendants under the Pennsylvania constitution and his fraud claim are barred.

▮▮▮ Larsen argues that his contract-based claims are not subject to sovereign immunity because no one would ever contract with the state if this were not the case. Larsen is incorrect. Pennsylvania has waived immunity for certain breach of contract claims, but Larsen's claims do not

---

**13.** The AOPC defendants do not raise the defense of state-law sovereign immunity, and it is not clear that the AOPC and its employees are "Commonwealth parties" entitled to such immunity. *See* 42 Pa. C. S.A. § 8501 (defining "Commonwealth party" as "[a] Commonwealth agency and any employee thereof ..."); 42 Pa.C.S.A. § 102 (defining "Commonwealth agency" as "[a]ny executive agency or independent agency"); 42 Pa.C.S.A. § 102 (excluding "any court or other officer or agency of the unified judicial system" from the definitions of executive agency and independent agency).

fit any of these limited exceptions. *See* 62 Pa.C.S.A. § 1724. Further, even if Larsen's claims fell within this statutory waiver, exclusive jurisdiction over such claims is vested in the Pennsylvania Board of Claims, and they could not be brought before this Court. *Wikert v. Pa. Dep't of Transportation,* C.A. No. 07–cv–1438, 2008 WL 169702, at *3 (W.D.Pa. Jan.17, 2008).

■■■■ Larsen also argues that the "personal property" waiver of immunity applies to his claims. Under 42 Pa.C.S.A. § 8522, the General Assembly waived immunity "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity" in nine specific circumstances. 42 Pa.C.S.A. § 8522(a). Larsen claims that the exception for claims arising out of "[t]he care, custody or control of personal property in the possession or control of Commonwealth parties" applies to his claims. 42 Pa.C.S.A. § 8522(b)(3). As an initial matter, the exceptions to immunity set forth in § 8522 apply only to negligent acts, and therefore, only to Larsen's negligence claim. *See Clark v. SEPTA,* 691 A.2d 988, 992 (Pa.Commw.Ct.1997); *Rodriguez v. Smith,* C.A. No. 03–3675, 2005 WL 1484591, at *8 (E.D.Pa. June 21, 2005). Even this claim, however, does not fall within the personal property exception relied on by Larsen. That exception applies only where the personal property *itself* is alleged to have caused the injury. *See Sugalski v. Pennsylvania,* 131 Pa. Cmwlth. 173, 569 A.2d 1017, 1019 (1990) (finding claim that state police failed to place seized funds in an interest bearing account did not fall within personal property exception because plaintiffs' alleged

injuries were caused by failure to handle the funds as desired, not by the funds themselves). Even assuming that Larsen's pension benefits constitute personal property for purposes of § 8522(b)(3) [14], this exception is inapplicable to the present case as Larsen alleges that his injuries were caused by the defendants' mishandling of his pension, not the pension itself. Because Larsen's state-law constitutional, tort, and contract claims against the SERS defendants do not fit within any exception to sovereign immunity, they must be dismissed.

■■■ Larsen's state-law mandamus claim, on the other hand, is not subject to sovereign immunity. Under Pennsylvania law, actions in mandamus are not subject to the defense of sovereign immunity. *Banfield v. Cortes,* 922 A.2d 36, 44 (Pa. Commw.Ct.2007) (citing *Maute,* 657 A.2d at 986). "[T]he doctrine of sovereign immunity does not bar suits that seek to compel state officials to carry out their duties in a lawful manner." *Id.* This point is academic in this case, however, because Larsen's mandamus claim, instituted to compel performance of an official duty, lies against SERS, SERB, and individual SERS defendants only in their official capacities, *see Maute,* 657 A.2d at 986, and the Eleventh Amendment bars any state-law claims against the agency defendants or the individual defendants in their official capacities from being brought in federal court. *Pennhurst,* 465 U.S. at 105–06, 104 S.Ct. 900; *Hess,* 297 F.3d at 325.

### D. Qualified Immunity

Frankforter also argues that he is entitled to qualified immunity from Larsen's claims against him in his individual capacity. Alternatively, Frankforter requests a more definite statement from Larsen if

---

**14.** *But see Potter v. Springfield Twp.,* 681 A.2d 241, 243 (Pa.Commw.Ct.1996) (holding complaint did not allege facts sufficient to establish that a pension fund was personal property for purposes of § 8522(b)(3)).

additional facts are necessary to determine if qualified immunity applies. The Court agrees that Frankforter is entitled to qualified immunity.

"Qualified immunity shields state officials from suit when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Burella v. City of Philadelphia,* 501 F.3d 134, 139 (3d Cir.2007) (quoting *Yarris v. County of Delaware,* 465 F.3d 129, 140 (3d Cir.2006)). Qualified immunity is immunity from suit rather than a mere defense to liability, which is effectively lost if a case is erroneously permitted to go to trial, and therefore questions of immunity should be resolved at the earliest possible stage in litigation. *Scott v. Harris,* —— U.S. ——, 127 S.Ct. 1769, 1773 n. 2, 167 L.Ed.2d 686 (2007) (citations omitted).

Determining whether an official is entitled to qualified immunity entails a two-step process. First, the court must resolve a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 1774 (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). This initial inquiry "is not a question of immunity at all, but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." *Curley v. Klem,* 499 F.3d 199, 207 (3d Cir.2007). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. The focus of this second step is to determine whether "the officer made a reasonable mistake about the legal constraints on his actions and should therefore be protected against suit." *Curley,* 499 F.3d at 207. "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody,* 361 F.3d 232, 238 (3d Cir.2004); *see also Curley,* 499 F.3d 199, 208–11 (3d Cir.2007).

In this case, Frankforter does not contest that, taking the complaint in the light most favorable to Larsen, the allegations show that his conduct violated Larsen's constitutional rights. Larsen alleges that Frankforter had a statutory duty to provide him with the information contained in Management Directive 570.8, and that by failing to do so Frankforter impaired his contractual right to his retirement benefits and deprived him of such benefits in violation of due process. Assuming that Frankforter was under a duty to so inform Larsen, and accepting as true the allegations that Management Directive 570.8 would have provided Larsen the opportunity to file a conditional retirement application which would have resulted in his receipt of the benefits he now seeks, it may be possible for Larsen to make out a contracts clause or due process claim against Frankforter.[15]

---

15. Count III of the complaint asserts an equal protection claim against "all defendants", in which Larsen alleges that *SERS'* failure to include unvouchered expenses in his final average salary calculation violates equal protection because *SERS* has always included such expenses in other state employees' final average salaries. Count III fails to state a claim

Frankforter argues that he is entitled to qualified immunity because he did what any reasonable officer in his position would have done to inform Larsen about his pension benefits upon his first termination. Former 71 Pa.C.S.A. § 5906(f) provided:

> The head of department shall designate an employee of his department to serve as a retirement counselor subject to approval by the board. Such retirement counselor shall assist the head of department in advising the employees of the department of their rights and duties as members of the system.

71 Pa.C.S.A. § 5906(f) (Repealed 1991, Aug. 5, P.L. 183, No. 23, § 34(2), effective Aug. 27, 1994). "Head of department" included the Court Administrator of Pennsylvania. 71 Pa.C.S.A. § 5102. A retirement counselor was defined as: "The State employee whose duty it shall be to advise each employee of the department of his rights and duties as a member of the system." 71 Pa.C.S.A. § 5102 (Repealed 1991, Aug. 5, P.L. 183, No. 23, § 34(2), effective Aug. 27, 1994). Larsen alleges, and we must accept as true for purposes of this motion to dismiss, that Frankforter was a "retirement counselor" under this statute.[16]

On August 5, 1991, the Pennsylvania legislature repealed § 5906(f) which provided for the designation of retirement counselors by department heads, and changed the definition of "retirement counselor" in § 5102 to: "The *State Employees' Retirement System* employee whose duty it shall be to advise each employee of his rights and duties as a member of the system," 71 Pa.C.S.A. § 5102 (emphasis added). *See* 1991, Aug. 5, P.L. 183, No. 23, § 34(2). These changes were to take effect on the date of publication in the Pennsylvania Bulletin of a certification by SERB of the full implementation of the seven-office statewide retirement counseling field office network that was to replace retirement counseling within individual departments. *See id.;* 71 Pa.C.S.A. § 5102, Historical and Statutory Notes, 1991 Legislation. Publication of SERB's certification that the field office network was fully implemented occurred on August 27, 1994. *See* 71 Pa.C.S.A. § 5102, Historical and Statutory Notes, 1991 Legislation (citing 24 Pa. Bull. 4437 (Aug. 27, 1994)).

Larsen was first terminated on June 3, 1994. On June 17, 1994, Frankforter sent a letter to Larsen "to explain the status and disposition of your Judiciary pay and

---

against Frankforter because Larsen alleges only that SERS has violated equal protection and sets forth no facts showing that Frankforter has anything to do with calculating of his final average salary. Larsen has failed to allege sufficient personal involvement by Frankforter to hold him liable under § 1983, *see Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005), and therefore Larsen's equal protection claim fails the first prong of the qualified immunity analysis.

16. Larsen cites to numerous other statutory provisions, as they existed in June 1994, in an apparent attempt to expand upon the obligations he claims Frankforter had to provide him with information. These provisions, however, set out the duties of SERB or a "head of the department", not a retirement counselor. *See* 71 Pa.C.S.A. §§ 5902(g)

(board); 5903(b) (board); 5905(e)(1) (board); 5905(e.1) (board); 5905(j) (head of department). The only other provision cited by Larsen which relates to a retirement counselor is 71 Pa.C.S.A. § 5903(a), which required SERB to provide a manual of regulations to the heads of the departments and their respective retirement counselors "who shall make the information contained therein available to the general membership." Larsen does not allege that a manual of regulations was not available to him, but only that he did not receive Management Directive 570.8, and therefore, for purposes of this case, § 5903(a) did not impose any duties on Frankforter beyond his alleged duty as a retirement counselor to "to advise each employee of the department of his rights and duties as a member of the system."

benefits as of the close of business June 3, 1994."[17] (Doc. 12, Ex. A. at 1.) The letter provided, in relevant part:

Please note that your eligibility for coverage under the Judiciary's benefit programs also terminated as of the close of business on June 3, 1994. The following will provide information regarding the disposition of your judiciary benefits as of that date.

As a participating member of the State Employes' Retirement System (SERS), you may now be eligible for certain retirement benefits through that system. For information regarding the retirement rights and benefits that may be available to you at this time, you should contact the SERS's Regional Counseling Center for the Pittsburgh area. That SERS Regional Counseling Center is located at Foster Plaza 6, Suite 400, 681 Anderson Drive in Pittsburgh, and you may contact them by phone by calling 1–800–633–5461.

(*Id.* at 1–2.)

■ Given Frankforter's explicit referral of Larsen to the SERS regional counseling center "[f]or information regarding the retirement rights and benefits that may be available to you at this time," it would not be clear to a reasonable officer in the same position that Frankforter's conduct was unlawful in the situation he confronted. *See Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. It was not unreasonable for Frankforter to fulfill his duty to advise Larsen of his rights and duties as a member of SERS by referring Larsen to the SERS counseling center established specifically for that purpose. This is especially so given that the statute requiring

Frankforter to so inform Larsen had been repealed three years prior to Larsen's termination and that the regional field office, required by the 1991 act to replace departmental retirement counselors, was operational. Larsen argues that Frankforter is not entitled to qualified immunity because the repeal of § 5906(f) was technically not effective until the August 27, 1994 publication in the Pennsylvania Bulletin of SERB's certification that the entire field office network was fully implemented. While Larsen is correct about the effective date of the repeal, a reasonable officer in Frankforter's position would not clearly believe he was violating his duties, as stated in § 5906(f), by referring an employee to the SERS retirement counseling center. The fact that § 5906(f) was "officially" repealed a mere twelve weeks after Larsen's retirement, however, certainly makes Frankforter's duties less clear and strongly supports the conclusion that, if Frankforter made any mistake with respect to his obligations under § 5906(f), the mistake was a reasonable one. *See Curley,* 499 F.3d at 207.

■ Larsen also argues that Frankforter is collaterally estopped from raising qualified immunity because he was denied this defense in *Larsen v. Senate,* 955 F.Supp. 1549 (M.D.Pa.1997), *aff'd in part and rev'd in part,* 154 F.3d 82 (3d Cir.1998). This is not so. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior

17. Although not attached to the complaint, Frankforter's communications with Larsen are referred to in the complaint and integral to Larsen's claims against Frankforter. The Court may therefore consider the June 17, 1994 letter, the authenticity of which is un-

questioned, without converting Frankforter's motion to dismiss to a motion for summary judgment. *See Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir.2002); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997).

judgment.'" *Peloro v. United States,* 488 F.3d 163, 174–75 (3d Cir.2007) (quoting *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.,* 63 F.3d 1227, 1231–32 (3d Cir.1995)). The issue addressed in *Larsen v. Senate* and the issue Larsen seeks to preclude here are not the same, and therefore, Larsen has failed to meet the first prerequisite for application of collateral estoppel.

In *Larsen v. Senate,* Larsen brought numerous claims against, among other defendants, the AOPC and two employees thereof, including Frankforter. In the claims relevant here, Larsen alleged that Frankforter and others violated the contracts clause by terminating his medical benefits in June 1994.[18] *Larsen,* 955 F.Supp. at 1576; *Larsen,* 154 F.3d at 86. Frankforter moved to dismiss Larsen's claims, in part, as barred by qualified immunity. Frankforter argued that he was entitled to qualified immunity as to Larsen's contracts clause claim because the medical insurance plan at issue was for retired judiciary members, not terminated ones, and because a 1993 amendment to the Pennsylvania Constitution precluded benefits for a judge who was removed from office. The district court rejected Frankforter's first argument because the insurance plan was not before the court on the motion to dismiss, and the court accepted as true for purposes of the motion Larsen's assertion that he was covered by the terms of the plan. *Larsen,* 955 F.Supp. at 1577. On appeal, the Third Circuit agreed, citing the "absence of any authority" for excluding Larsen from the plan. *Larsen,* 154 F.3d at 88. The district court also rejected Frankforter's sec-

ond argument, finding that Pennsylvania precedent suggested that medical benefits are a form of deferred compensation, and that Larsen may have been able to show that his right to such benefits vested before enactment of the 1993 amendment. *Larsen,* 955 F.Supp. at 1579. The Third Circuit affirmed, also concluding that, based on Pennsylvania precedent, a reasonable officer would have known that it violated an individual's constitutional rights to deprive him of vested benefits pursuant to a provision adopted after vesting. *Larsen,* 154 F.3d at 91.

Thus the issues with respect to Frankforter's qualified immunity addressed in *Larsen v. Senate* were whether a reasonable official would have believed Larsen was excluded by the terms of the judiciary's medical plan and whether a reasonable official would have known that the 1993 constitutional amendment did not provide a basis for the termination of medical benefits that vested prior to enactment of the amendment. The issue in this case is quite different. Here, Larsen alleges that Frankforter violated his constitutional rights by failing to fulfill a statutory duty to inform him of Management Directive 570.8. Frankforter argues, and the Court agrees, that he is entitled to qualified immunity because he did all a reasonable officer in his position would have believed necessary to fulfill this duty to inform. The qualified immunity issue here has nothing to do with Larsen's eligibility under the judiciary's medical insurance plan or application of the 1993 constitutional amendment to his claims for medical benefits. Because the issues regarding Frank-

---

**18.** Larsen also alleged that Frankforter violated due process and equal protection. The due process arguments in *Larsen v. Senate* focused on whether Larsen was provided sufficient process to challenge the denial of his benefits in the proceedings challenging his terminations, *see, e.g.,* 154 F.3d at 92–93, an

issue not raised in any manner here. The Third Circuit also found that Frankforter was entitled to qualified immunity as to Larsen's equal protection claim because Larsen had failed to adequately allege a constitutional violation. *Id.* at 93–94.

forter's qualified immunity in *Larsen v. Senate* and this case are not the same, Frankforter is not collaterally estopped from raising them here. Frankforter is entitled to qualified immunity against Larsen's claims in this case.

### E. Mandamus Claim Against AOPC Defendants

Finally, the AOPC defendants argue that Larsen's mandamus claim against them must be dismissed because Larsen makes no allegations against them in this count and because they have no power to provide the relief Larsen seeks. The Court agrees and will dismiss this claim.

First, Larsen does not even mention the AOPC defendants in setting forth his mandamus claim. Count VIII of Larsen's complaint provides in full:

132. All of the preceding paragraphs are included herein as if fully set forth.

133. Article I, Section 10 of the United States Constitution expressly prohibits a governmental agency such as *SERS*, or its agents and employees, from taking any action to impair the obligation of contracts.

134. Article 1, Section 17 of the Pennsylvania Constitution expressly prohibits a governmental agency such as *SERS, or its agents and employees*, from taking any action to impair the obligations of contracts.

135. The aforementioned constitutional provisions require *SERS, and the individually named Defendants who are members of the SERS Board of Directors*, to enact a Resolution or otherwise insure a method for the distribution of Plaintiff's full pension benefits as alleged above.

136. Therefore, Plaintiff is entitled to an order in Mandamus directing *these Defendants* to provide him with all of his pension benefits as alleged above.

(Compl. ¶¶ 132–36 [emphasis added].) This count is clearly directed only toward the SERS defendants and facially states no claim against the AOPC defendants.

■■■ Second, even liberally construing this count of the complaint against "all defendants," Larsen has failed to meet the elements of a mandamus claim as to the AOPC defendants. "Mandamus is an extraordinary writ which will issue to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy. If any one of the foregoing elements is absent, mandamus does not lie." *Burger v. Bd. of Sch. Directors of McGuffey Sch. Dist.*, 805 A.2d 663, 666 (Pa.Commw.Ct.2002). Larsen has not alleged any "ministerial act or mandatory duty" in the AOPC defendants with regard to his claim and asks for a "Resolution" regarding his pension or distribution of his benefits which only SERS can provide.

Larsen cites to 71 Pa.C.S.A. §§ 5507(a) and 5508 in arguing that the AOPC defendants have obligations with regard to his pension. These provisions, however, set out an employer's obligation to make contributions to a retirement fund only as directed by SERS. *See* 71 Pa.C.S.A. § 5507(a) (stating "employers ... shall make contributions to the fund ... in such amounts as shall be certified by the board"); 71 Pa.C.S.A. § 5508(a) ("The amount of ... employer contributions ... shall be computed by the actuary ..."); 71 Pa.C.S.A. § 5102 (defining the "board" as SERB and the "actuary" as "[t]he consultant to the board ..."). The AOPC defendants have no authority and no duty to calculate or distribute Larsen's retirement

benefits and therefore his mandamus claim against these defendants shall be dismissed.

## IV. CONCLUSION

The SERS defendants' motion to dismiss will be granted in part and denied in part. All of Larsen's claims against SERS and SERB are barred by the Eleventh Amendment and his state-law claims against SERS and SERB are barred by state-law sovereign immunity. All of Larsen's claims against the individual SERS defendants in their official capacities are also barred by the Eleventh Amendment, and his state-law claims against the individual SERS defendants, in both their official and individual capacities, are barred by state-law sovereign immunity. Thus, the only claims remaining are Larsen's contracts clause, due process, and equal protection claims against the individual SERS defendants in their individual capacities. Because Larsen's claims are dismissed on the basis of immunity, dismissal is with prejudice. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997).

The AOPC defendants' motion to dismiss will be granted. All of Larsen's claims against AOPC and Frankforter in his official capacity are barred by the Eleventh Amendment. Further all of Larsen's claims against the AOPC and Frankforter are barred by the statute of limitations. In addition, Frankforter is entitled to qualified immunity from Larsen's claims. Finally, Larsen has failed to state a mandamus claims against the AOPC defendants. Because Larsen's claims are dismissed on the basis of immunity and the statute of limitations, dismissal is with prejudice. *Id.*

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The SERS defendants' motion to dismiss (Doc. 10) is GRANTED IN PART AND DENIED IN PART.

2. All of Larsen's claims against SERS and SERB are dismissed with prejudice.

3. All of Larsen's claims against the individual SERS defendants in their official capacities and all of Larsen's state-law claims against the individual SERS defendants in any capacity are dismissed with prejudice.

4. The AOPC defendants' motion to dismiss (Doc. 11) is GRANTED.

5. All of Larsen's claims against AOPC and Frankforter are dismissed with prejudice.